[Cite as *State v. Gaddis*, 2011-Ohio-2822.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

STATE OF OHIO                                       :

    Plaintiff-Appellee                         :          C.A. CASE NO.   24007

v.                                                 :          T.C. NO.   09CR1518

JEREMIAH K. GADDIS                                 :        (Criminal appeal from
                                                           Common Pleas Court)
    Defendant-Appellant                        :

                                                   :

          . . . . . . . . . .

**O P I N I O N**

Rendered on the ___10th___ day of _____June_____, 2011.

. . . . . . . . . .

LAURA M. WOODRUFF, Atty. Reg. No. 0084161, Assistant Prosecuting Attorney, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

ANTONY A. ABBOUD, Atty. Reg. No. 0078151, 130 W. Second Street, Suite 1818, Dayton, Ohio 45402
        Attorney for Defendant-Appellant

. . . . . . . . . .

KLINE, J. (by assignment)

{¶ 1}  Jeremiah Kaleb Gaddis (hereinafter "Gaddis") appeals the judgment of the Montgomery County Court of Common Pleas, which convicted him of endangering children under R.C. 2919.22(A) & (E)(2)(b).  On appeal, Gaddis claims that he was in custody at the time he made various statements to the police.

Because of this, Gaddis contends that the trial court should have granted his motion to suppress these statements. We disagree. Under the circumstances, a reasonable person would not have believed that he or she was under arrest. Therefore, the trial court did not err in denying Gaddis's motion to suppress. Next, Gaddis contends (1) that there is insufficient evidence to support his conviction and (2) that his conviction is against the manifest weight of the evidence. We disagree. First, after viewing the evidence in a light most favorable to the prosecution, we believe that any rational trier of fact could have found the essential elements of endangering children proven beyond a reasonable doubt. And second, we find substantial evidence upon which the trier of fact could have reasonably concluded that all the elements of endangering children were proven beyond a reasonable doubt. Accordingly, we overrule Gaddis's assignments of error and affirm the judgment of the trial court.

I

{¶ 2} Kristen Cummins (hereinafter "Kristen") and her nine-month-old son (hereinafter the "Child") shared an apartment with Gaddis. On April 20, 2009, Kristen took care of the Child for the entire day until she left for work at approximately 3:03 p.m. Kristen thought that the Child acted "okay" during this time period. Transcript at 61. Furthermore, Kristen did not notice any bumps or abrasions on the Child's head.

{¶ 3} When she left for work, Kristen left her son in Gaddis's care. Gaddis then had exclusive care and control of the Child until Kristen's mother, Tina Cummins (hereinafter "Tina"), arrived at the apartment sometime between 3:40 and

3:45 p.m.

{¶ 4} When Tina arrived at the apartment, the Child was in a car seat on the apartment floor. Tina noticed that the Child was "fussing" and "making noises." Transcript at 127. As a result, Tina believed that the Child "wasn't content." Id.

{¶ 5} Gaddis, the Child, and Tina then went to Wal-Mart. Gaddis drove the Child, and Tina drove in her own car. After they got to Wal-Mart, Tina noticed a large red knot on the back of the Child's head. Tina asked Gaddis about the knot, but Gaddis denied knowing anything about it. Then, Gaddis told Tina that he had called Children's Hospital in Cincinnati about the knot and that everything was "okay." Transcript at 132. Finally, Gaddis asked Tina not to tell Kristen about the knot. Tina then sent Kristen a text message about the Child's apparent injury. Kristen replied that she "had no idea what [Tina] was talking about." Id.

{¶ 6} When Kristen arrived home from work, the entire left side of the Child's head was swollen. Kristen and the Child saw a pediatrician the next day, and the pediatrician recommended that they go to Children's Medical Center for a head scan. Kristen then took the Child to Children's Medical Center, where Gaddis and Tina met them. While at Children's Medical Center, the Child was diagnosed with a skull fracture. The doctors believed that the skull fracture was caused by "blunt force trauma" – more specifically, a "blow" to the head from "suspected child abuse." Transcript at 208, 211.

{¶ 7} Because of the suspected child abuse, Officer Robert Bluma (hereinafter "Officer Bluma") was called to the Children's Medical Center. After speaking with various medical personnel, Officer Bluma found Kristen, Tina, and

Gaddis in a room together. Officer Bluma wanted to get individual statements from the three of them, so he asked Gaddis to leave the room. Gaddis agreed, and Officer Bluma walked with Gaddis to an adjoining room. Officer Bluma did not consider Gaddis a suspect at this time. Furthermore, Officer Bluma did not tell Gaddis (1) that he was under arrest or (2) that Gaddis had to stay in the room. However, after leaving Gaddis in the adjoining room, Officer Bluma closed the door behind him. Gaddis stayed in this room for twenty-to-thirty minutes while Officer Bluma spoke with Kristen and Tina.

{¶ 8} After speaking with Kristen and Tina, Officer Bluma returned to Gaddis's room. As Officer Bluma explained, "After I was done speaking with the mother of the infant, she had stated that she was going to voluntarily fill out a written statement at which point I provided her a statement and had walked over to Mr. Gaddis' room.

{¶ 9} "I had explained to him that due to the information that she relayed to me, I had asked him if he would voluntarily fill out a written statement to what had taken place. And he had said yes." Transcript at 11. Officer Bluma did not give Gaddis any *Miranda* warnings before obtaining the written statement.

{¶ 10} Later, Officer Bluma saw Gaddis in another part of the hospital talking to Tina. Officer Bluma approached Gaddis, and Gaddis informed Officer Bluma that "his intentions were to go home." Transcript at 25. Officer Bluma then asked Gaddis if he would stay and talk to Detective Jeffrey Colvin (hereinafter "Detective Colvin"). Gaddis agreed, and Officer Bluma directed Gaddis back to the room where Gaddis had given his written statement.

{¶ 11} Shortly thereafter, Detective Colvin entered Gaddis's room. Detective Colvin "initialized [his] presence with the statement that [Gaddis] was free to leave and that he was not under arrest." Transcript at 32. According to Detective Colvin, Gaddis appeared to understand this information. Then, Detective Colvin interviewed Gaddis for approximately fifteen-to-twenty minutes.

{¶ 12} On May 27, 2009, a Montgomery County Grand Jury returned a two-count indictment against Gaddis. Under the first count, Gaddis was charged with endangering children under R.C. 2919.22(B)(1) & (E)(2)(d). And under the second count, Gaddis was charged with endangering children under R.C. 2919.22(A) & (E)(2)(b).

{¶ 13} Gaddis filed a motion to suppress the statements he made to Officer Bluma and Detective Colvin at the Children's Medical Center. After a suppression hearing, the trial court denied this motion.

{¶ 14} Gaddis went to trial, and he asked for a jury to hear count one and for the trial court to hear count two. The jury acquitted Gaddis of endangering children under R.C. 2919.22(B)(1) & (E)(2)(d). But the trial court found Gaddis guilty of endangering children under R.C. 2919.22(A) & (E)(2)(b). The trial court then sentenced Gaddis to eighteen months in prison.

{¶ 15} Gaddis appeals and asserts the following three assignments of error: I. "THE TRIAL COURT ERRED IN OVERRULING MR. GADDIS'S MOTION TO SUPPRESS HIS STATEMENTS." II. "THE VERDICT AGAINST MR. GADDIS WAS NOT SUPPORTED BY THE SUFFICIENCY OF THE EVIDENCE." And, III. "THE VERDICT AGAINST MR. GADDIS WAS AGAINST THE MANIFEST

WEIGHT OF THE EVIDENCE."

II

{¶ 16} In his first assignment of error, Gaddis contends that he was in custody when he made various statements to Officer Bluma and Detective Coleman. As a result, Gaddis argues that the trial court should have suppressed these statements.

{¶ 17} As the Supreme Court of Ohio has held, "Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. * * * Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. * * * Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, at ¶8 (citations omitted). See, also, *State v. D'Allesandris*, Greene App. No. 23889, 2011-Ohio-1126, at ¶13. (In the present case, the trial court did not make any factual findings. Regardless, the evidence at the suppression hearing was largely undisputed. See, e.g., *State v. Gilbert*, 184 Ohio App.3d 642, 2009-Ohio-5528, at ¶22.)

{¶ 18} "In *Miranda v. Arizona* (1966), 384 U.S. 436[,] the United States Supreme Court held that the State may not use statements stemming from a defendant's custodial interrogation unless it demonstrates the use of procedural

safeguards to secure the defendant's privilege against self-incrimination. Id. at 444. Police are not required to give *Miranda* warnings to every person that they question, even if the person being questioned is a suspect. *State v. Biros* (1997), 78 Ohio St.3d 426, 440[.] Instead, *Miranda* warnings are only required for custodial interrogations. Id." *State v. Hardy*, Montgomery App. No. 24114, 2011-Ohio-241, at ¶31. "The procedural safeguards adopted in *Miranda* become necessary once the suspect is taken into custody 'or otherwise deprived of his freedom of action in any significant way.' *Miranda* [at 477]. The test is whether a reasonable person under the circumstances would believe that he is under arrest. *Berkemer v. McCarthy* (1984), 468 U.S. 420." *State v. Chenoweth*, Miami App. No. 2010 CA 14, 2011-Ohio-1276, at ¶7. "Neither an officer's subjective intent nor the defendant's subjective belief is relevant to this analysis." *State v. Severt*, Montgomery App. No. 24074, 2010-Ohio-5389, at ¶15 (internal quotation and citation omitted).

{¶ 19} "In determining whether a person is in custody, courts have considered certain factors to be relevant. These include the length of the detention, the perception and expectation of the detainee as to his freedom to leave at the conclusion of the interrogation, the atmosphere of the interrogation, and whether the interview is in a public or private place. See *Berkemer*[;] *State v. Warrell* (1987), 41 Ohio App.3d 286[.] This court has considered factors such as the location of the questioning (at home versus in the more restrictive environment of a police station), was the defendant a suspect at the time the interview began, was the defendant's freedom to leave restricted in any way, was the defendant

handcuffed or told he was under arrest, were threats made during the interrogation, was the defendant physically intimidated during the interrogation, did the police verbally dominate the interrogation, the defendant's purpose for being at the place where questioning took place, and whether police took any action to overpower, trick or coerce the defendant into making a statement. *State v. Estepp* (Nov. 26, 1997), Montgomery App. No. 16279." *State v. Knight*, Clark App. No. 04-CA-35, 2008-Ohio-4926, at ¶120; *State v. Brinegar*, Montgomery App. No. 23296, 2010-Ohio-1607, at ¶42.

{¶ 20} Here, we find that Gaddis was not in custody when he made statements to Officer Bluma and Detective Colvin. First, we will discuss why Gaddis was not in custody during the interview with Officer Bluma. Then, we will discuss why Gaddis was not in custody during the interview with Detective Colvin.

A. The Interview With Officer Bluma

{¶ 21} Gaddis argues that he was in custody during the interview with Officer Bluma. To support this argument, Gaddis claims that he was left in a closed room for twenty-or-thirty minutes. Gaddis also claims (1) that Officer Bluma "would shut the door behind him" whenever Bluma left the room and (2) that Gaddis asked Officer Bluma "what was going to happen next." Brief of Defendant-Appellant at 9. According to Gaddis, these facts demonstrate that "he was not free to leave." Id.

{¶ 22} For the following reasons, we disagree with Gaddis's argument. First, the interview took place in a hospital as opposed to a police station. Furthermore, Officer Bluma did not initially consider Gaddis to be a suspect. Gaddis was not handcuffed or told that he was under arrest, and there is no

evidence that Officer Bluma either intimidated or verbally dominated Gaddis during the interview.   Finally, Officer Bluma did not overpower, trick, or coerce Gaddis into making a statement.

{¶ 23} In light of this evidence, we find that a reasonable person would not have felt like he or she was under arrest.   Even though Officer Bluma directed Gaddis to the interview room, Officer Bluma "did not tell [Gaddis] to stay there." Transcript at 18.

{¶ 24} Therefore, we believe that a reasonable person would have felt free to leave – especially in light of the overwhelming evidence that points towards a non-custodial interrogation.   (Although it is irrelevant to our analysis, Gaddis did indeed leave the interview room and move freely about the hospital.)

{¶ 25} Therefore, as it relates to the interview with Officer Bluma, we find that the trial court did not err in denying Gaddis's motion to suppress.

B. The Interview With Detective Colvin

{¶ 26} Gaddis argues that he was in custody during the interview with Detective Colvin.   To support this argument, Gaddis claims that he wanted to leave the hospital but stayed because of Officer Bluma's request.

{¶ 27} Here, we find that the evidence does not support Gaddis's argument. At the suppression hearing, Detective Colvin testified to the following:

{¶ 28} "Q. [Y]ou did inform Mr. Gaddis that you wished to speak to him but he wasn't under arrest.   And this all took place at the hospital?

{¶ 29} "A. Yes.   It's my recall there was a waiting room or consultation room two or three doors down and that's where he was located when I spoke with him.

{¶ 30} "Q. And did Mr. Gaddis appear, in your opinion, to understand when you relayed this information to him that he was free to go?

{¶ 31} "A. Yes.

{¶ 32} "Q. Did he acknowledge that verbally to you?

{¶ 33} "A. Yes, he did.

{¶ 34} "Q. And how long did you speak to Mr. Gaddis after you relayed that information to him that he was free to go?

{¶ 35} "A. Fifteen, 20 minutes."  Transcript at 33.

{¶ 36} Therefore, Detective Colvin began the interview by telling Gaddis (1) that he was not under arrest and (2) that Gaddis was free to go.  Furthermore, under the factors mentioned earlier, Gaddis points to no evidence that would support a custodial-interrogation finding.  Accordingly, we find that a reasonable person would not have felt like he or she was under arrest during the interview with Detective Colvin.

{¶ 37} Therefore, as it relates to the interview with Detective Colvin, we find that the trial court did not err in denying Gaddis's motion to suppress.

C. Conclusion

{¶ 38} For the foregoing reasons, we overrule Gaddis's first assignment of error.

III

{¶ 39} In his second assignment of error, Gaddis contends that insufficient evidence supports his conviction for endangering children.

{¶ 40} "A sufficiency of the evidence argument challenges whether the State

has presented adequate evidence on each element of the offense to allow the case to go to the jury or to sustain the verdict as a matter of law." *State v. Hancher*, Montgomery App. No. 23515, 2010-Ohio-2507, at ¶41, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 1997-Ohio-52. When reviewing a case to determine if the record contains sufficient evidence to support a criminal conviction, we must "examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, at paragraph two of the syllabus; *Hancher* at ¶41; see, also, *Jackson v. Virginia* (1979), 443 U.S. 307, 319.

{¶ 41} The sufficiency-of-the-evidence test raises a "question of law and will not allow a reviewing court to weigh the evidence." *City of Fairborn v. Logan* (June 25, 1991), Greene App. No. 90-CA-93, citing *State v. Martin* (1983), 20 Ohio App.3d 172, 175; *Jackson* at 319; see, also, *State v. Powell*, 177 Ohio App.3d 825, 2008-Ohio-4171, at ¶22. Instead, the sufficiency-of-the-evidence test "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson* at 319. "This court will reserve the issues of the weight given to the evidence and the credibility of witnesses for the trier of fact." *Powell* at ¶22 (internal quotation omitted); see, also, *State v. Thomas* (1982), 70 Ohio St.2d 79, 79-80; *State v. DeHass* (1967), 10 Ohio St.2d 230, at paragraph one of the

syllabus.

{¶ 42} Gaddis was convicted of endangering children. Under R.C. 2919.22(A), "No person, who is the * * * person having custody or control * * * of a child under eighteen years of age or a mentally or physically handicapped child under twenty-one years of age, shall create a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support." A "substantial risk" is "a strong possibility, as contrasted with a remote * * * possibility, that a certain result may occur or that certain circumstances may exist." R.C. 2901.01(H). On appeal, Gaddis argues that there is insufficient evidence that he created a substantial risk to the health or safety of the Child.

{¶ 43} Here, after viewing the evidence in a light most favorable to the prosecution, we find that sufficient evidence supports Gaddis's conviction. Initially, according to the medical evidence, the Child sustained a "blow" to the head – more specifically, "blunt force trauma" from "suspected child abuse." Transcript at 208, 211. Moreover, the circumstantial evidence indicates that the blunt force trauma occurred while the Child was in Gaddis's exclusive custody or control. On April 20, 2009, the Child was with Kristen all day until Kristen left for work at approximately 3:03 p.m. During this time period, Kristen watched the Child and played with him. Furthermore, Kristen testified (1) that the Child appeared okay and (2) that she did not see any bumps or knots on the Child's head. Gaddis had sole responsibility for the Child from approximately 3:03 p.m. until Tina arrived at Gaddis's apartment between 3:40 p.m. and 3:45 p.m. Once at the apartment, Tina noticed the following:

{¶ 44} "Q. Who was home?

{¶ 45} "A. [Gaddis] and [the Child].

{¶ 46} "Q. And did you see [the Child] when you went inside?

{¶ 47} "A. I did.

{¶ 48} "Q. Where was he?

{¶ 49} "A. He was in his car seat on the floor.

{¶ 50} "Q. Did you notice anything about his demeanor, what he was doing?

{¶ 51} "A. He was fussing.

{¶ 52} "Q. And describe fussing for us.   What do you consider fussing?

{¶ 53} "A. He just wasn't content.  He was kind of fussing, making noises, wanting what I assumed from being in the car seat because he was already strapped in, ready to go.

{¶ 54} "Q. Okay, all right.   So you attributed his fussiness to being in that car seat inside.

{¶ 55} "A. Yes."   Transcript at 126-27.

{¶ 56} Gaddis then drove the Child to Wal-Mart.   Tina also went to Wal-Mart, but she drove in her own car.   Once inside Wal-Mart, Tina noticed (1) the large red knot behind the Child's ear and (2) that the Child was "extremely quiet" and "not smiling."   Transcript at 130.

{¶ 57} Based on the foregoing evidence, a rational trier of fact could have found that the Child was injured while in Gaddis's exclusive care or control. According to Kristen's testimony, the Child was healthy and acting normally before being left with Gaddis.   And according to Tina, the Child was injured and behaving

oddly after being in Gaddis's care.

{¶ 58} The state argues that the present case is similar to *State v. King*, 179 Ohio App.3d 1, 2008-Ohio-5363. We agree. In *King*, this court found sufficient evidence to support a conviction for endangering children "despite the fact that there was no eyewitness to the actual injury[.]" Id. at ¶44. Nevertheless, "the evidence support[ed] a finding that the injury occurred during the time that [the defendant] had exclusive care and control of [the child]. The evidence also support[ed] a reasonable inference that [the defendant] caused the injury by shaking the child and causing her skull to impact on a hard surface. [F]inally[,] the evidence support[ed] a reasonable inference that [the defendant], by shaking the child with such force and hitting her head on a surface, should have been aware that his conduct would cause harm to the child." Id. Similarly, in the present case, the evidence supports a finding that the injury occurred while Gaddis had exclusive care and control of the Child. The evidence also supports a reasonable inference that Gaddis caused the injury by inflicting a significant blow to the Child's head. Finally, the evidence supports a reasonable inference that, by inflicting the blow, Gaddis should have been aware that his conduct would cause harm to the Child. Thus, the evidence supports the reasonable inference that Gaddis created a substantial risk for the Child.

{¶ 59} After viewing the foregoing evidence in a light most favorable to the prosecution, we find that any rational trier of fact could have found the essential elements of endangering children proven beyond a reasonable doubt. Accordingly, we overrule Gaddis's second assignment of error.

IV

{¶ 60} In his third assignment of error, Gaddis contends that his conviction is against the manifest weight of the evidence. Specifically, Gaddis argues that "there are no facts [to] demonstrate [that he] engaged in reckless behavior[.]" Brief of Defendant-Appellant at 14.

{¶ 61} "The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different." *Thompkins* at paragraph two of the syllabus. Sufficiency is a test of the adequacy of the evidence. Id. at 386. In contrast, "[w]eight of the evidence concerns the inclination of the *greater amount of credible evidence,* offered in a trial, to support one side of the issue rather than the other." Id. at 387 (internal quotation omitted) (emphasis sic).

{¶ 62} "Although a verdict is supported by sufficient evidence, a court of appeals may nevertheless conclude that the verdict is against the manifest weight of the evidence." *State v. Banks* (1992), 78 Ohio App.3d 206, 214. This is so because a "[r]eview of the manifest weight of evidence is [a] broader inquiry." *State v. Brickles* (Sept. 3, 1999), Montgomery App. No. 98-CRB-1054. When determining whether a criminal conviction is against the manifest weight of the evidence, we "will not reverse a conviction where there is substantial evidence upon which the [trier of fact] could reasonably conclude that all the elements of an offense have been proven beyond a reasonable doubt." *State v. Eskridge* (1988), 38 Ohio St.3d 56, at paragraph two of the syllabus. We "must review the entire record, weigh all of the evidence and all the reasonable inferences, consider the

credibility of the witnesses and determine whether in resolving conflicts in the evidence, the fact finder clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Dossett*, Montgomery App. No. 20997, 2006-Ohio-3367, at ¶32, citing *Thompkins* at paragraph two of the syllabus. However, "[t]he credibility of the witnesses and the weight to be given to their testimony are matters for the trier of facts to resolve." *State v. Alford*, Montgomery App. No. 23332, 2010-Ohio-2493, at ¶17, citing *DeHass* at paragraph one of the syllabus.

{¶ 63} "[T]he existence of the culpable mental state of recklessness is an essential element of the crime of endangering children under R.C. 2919.22(A)." *State v. McGee*, 79 Ohio St.3d 193, 195, 1997-Ohio-156. "A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature." R.C. 2901.22(C). And here, we find that there is substantial evidence upon which the trier of fact could have reasonably concluded that Gaddis acted recklessly.

{¶ 64} In reaching this conclusion, we considered the same evidence that we discussed in our resolution of Gaddis's sufficiency-of-the-evidence challenge. Granted, the evidence against Gaddis is circumstantial. But "a fact or matter in issue may * * * be proved through circumstantial evidence. Circumstantial evidence is proof of certain facts and circumstances in a given case, from which the trier of facts may infer other, connected facts which usually and reasonably follow according to the common experience of mankind. *State v. Duganitz* (1991), 76

Ohio App.3d 363[.] 'Circumstantial evidence and direct evidence inherently possess the same probative value.' *Jenks* [at 272]." *State v. Cranford*, Montgomery App. No. 23055, 2011-Ohio-384, at ¶38.

{¶ 65} Here, as we previously noted, the evidence shows that the blunt force trauma to the Child's head occurred while the Child was in Gaddis's exclusive custody or care. Because the Child was alone with Gaddis when the injury occurred, it reasonably follows that Gaddis inflicted the blunt force trauma. From this circumstantial evidence, the trier of fact could have reasonably inferred that Gaddis caused the Child's injury. As a result, the trier of fact could have easily found that Gaddis recklessly created a substantial risk of harm to the Child's health or safety by inflicting the blunt force trauma.

{¶ 66} Finally, Gaddis makes the following argument: "[W]here the jury acquitted Mr. Gaddis on count one of the indictment regarding endangering children (serious physical harm), it was improper to convict him of count two[.]" Brief of Defendant-Appellant at 14. We disagree. "[I]t is well established that the several counts of an indictment containing more than one count are not interdependent and an inconsistency in a verdict does not arise out of inconsistent responses to different counts." *State v. Carey*, Miami App. No. 2002-CA-70, 2003-Ohio-2684, at ¶21, citing *Dunn v. United States* (1932), 284 U.S. 390; *Browning v. State* (1929), 120 Ohio St. 62. See, also, *Euclid v. Sorrell*, Cuyahoga App. No. 91542, 2009-Ohio-3903, at ¶16. And here, we have found that Gaddis's conviction for endangering children is not against the manifest weight of the evidence. Therefore, we find no inconsistency in Gaddis being acquitted of count one of the

indictment.

{¶ 67} Based on the foregoing, we find that the trial court did not lose its way and create such a manifest miscarriage of justice that Gaddis's conviction must be reversed and a new trial be granted. We find substantial evidence upon which the trial court could have reasonably concluded that all the elements of endangering children were proven beyond a reasonable doubt.

{¶ 68} Accordingly, we overrule Gaddis's third assignment of error. Having overruled all of his assignments of error, we affirm the judgment of the trial court.

. . . . . . . . . .

FAIN, J. and DONOVAN, J., concur.

(Hon. Roger L. Kline, Fourth District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio).

Copies mailed to:

Laura M. Woodruff
Antony A. Abboud
Hon. Steven K. Dankof