[Cite as *State v. Curtis*, 2012-Ohio-3495.]

IN THE COURT OF APPEALS FOR DARKE COUNTY, OHIO

STATE OF OHIO                          :

    Plaintiff-Appellee                 :          C.A. CASE NO.    2011 CA 18

v.                                     :          T.C. NO.    11CR29

ROBERT L. CURTIS                       :          (Criminal appeal from
                                                    Common Pleas Court)

    Defendant-Appellant                :

                                       :

. . . . . . . . . .

## O P I N I O N

Rendered on the ___3rd___ day of _____August_____, 2012.

. . . . . . . . . .

R. KELLY ORMSBY, III, Atty. Reg. No. 0020615, Prosecuting Attorney, Darke County Prosecutor's Office, Courthouse, Third Floor, Greenville, Ohio 45331
    Attorney for Plaintiff-Appellee

PAUL WAGNER, Atty. Reg. No. 0067647, 1400 North Broadway, Greenville, Ohio 45331
    Attorney for Defendant-Appellant

. . . . . . . . . .

DONOVAN, J.

{¶ 1}  Defendant-appellant Robert L. Curtis appeals his conviction and sentence for two counts of sexual battery of a child less than thirteen years of age, in violation of R.C.

2907.03(A)(1), both felonies of the second degree; and two counts of gross sexual imposition of a child less than thirteen years of age, in violation of R.C. 2907.05(A)(4), both felonies of the third degree. Specifically, Curtis asserts that the trial court erred when it overruled his motion to suppress filed on April 11, 2011. A hearing was held on May 17, 2011. The trial court issued a written decision overruling Curtis' motion on May 18, 2011.

{¶ 2} The incident which forms the basis for the instant appeal occurred in December of 2010, when two minor girls, aged ten and seven, reported to family members that they had been sexually assaulted by Curtis on several occasions in 2010. The family members contacted the Darke County Sheriff's Office (DCSO), and an investigation into the allegations was initiated.

{¶ 3} On the morning of December 22, 2010, Detective David Hawes of DCSO contacted Curtis and asked him if he would agree to come to his office to be interviewed. Det. Hawes declined to tell Curtis what the interview concerned, but he did inform Curtis that his presence was voluntary and that he would be free to leave once the interview was over. At the interview conducted later that morning, Curtis made admissions regarding his sexual abuse of the two girls. At the end of the interview, Det. Hawes allowed Curtis to leave.

{¶ 4} On January 28, 2011, Curtis was indicted by the Darke County Grand Jury for four counts of rape, in violation of R.C. 2907.02(A)(1)(b), all felonies of the first degree; and eight counts of gross sexual imposition, in violation of R.C. 2907.05(A)(4), all felonies of the third degree. At his arraignment on February 8, 2011, Curtis stood silent, and the trial court entered a plea of not guilty to the indictment on his behalf.

**{¶ 5}** Curtis filed a motion to suppress on April 11, 2011, arguing that the admissions he made to Det. Hawes were coerced and involuntary. Curtis also asserted that he was subject to a custodial interrogation without being given his *Miranda* warnings. At the hearing on Curtis' motion on May 17, 2011, Det. Hawes was the only witness called to testify. The trial court issued a written decision overruling Curtis' motion to suppress shortly thereafter.

**{¶ 6}** On October 7, 2011, Curtis pled no contest to two counts of sexual battery against a child under the age of thirteen and two counts of gross sexual imposition of a child less than thirteen years of age in return for dismissal of the remaining counts in the indictment. The trial court accepted the no contest pleas, found Curtis guilty on all four counts, and sentenced him to a aggregate mandatory sentence of sixteen years in prison.

**{¶ 7}** It is from this judgment that Curtis now appeals.

**{¶ 8}** Curtis' sole assignment of error is as follows:

**{¶ 9}** "WHETHER THE STATE VIOLATED APPELLANT'S RIGHTS PURSUANT TO *MIRANDA V. ARIZONA*, 384 U.S. 436 AND ART I § 10 OF THE OHIO CONSTITUTION."

**{¶ 10}** In his sole assignment, Curtis contends that the trial court erred when it overruled his motion to suppress the statements he made to Det. Hawes during the interview conducted on December 22, 2010. In support, Curtis asserts that he was subjected to a custodial interrogation without being informed of his rights under the authority of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

**{¶ 11}** In regards to a motion to suppress, "the trial court assumes the role of trier of

facts and is in the best position to resolve questions of fact and evaluate the credibility of witnesses." *State v. Hopfer*, 112 Ohio App.3d 521, 679 N.E.2d 321 (2d Dist.1996), quoting *State v. Venham*, 96 Ohio App.3d 649, 653, 645 N.E.2d 831 (4th Dist.1994). The court of appeals must accept the trial court's findings of fact if they are supported by competent, credible evidence in the record. *State v. Isaac,* 2d Dist. Montgomery No. 20662, 2005-Ohio-3733, citing *State v. Retherford*, 93 Ohio App.3d 586, 639 N.E.2d 498 (2d Dist.1994). Accepting those facts as true, the appellate court must then determine, as a matter of law and without deference to the trial court's legal conclusion, whether the applicable legal standard is satisfied. *Id*.

{¶ 12} *Miranda* warnings are only required as a predicate for custodial interrogation. Neither the fact that one is a suspect, nor the fact that one is being questioned at a police station requires a finding of custodial interrogation. *Oregon v. Mathiason*, 429 U.S. 492, 495, 97 S.Ct. 711, 50 L.Ed.2d 714 (1997).

{¶ 13} The State is prohibited from using any statements made by a defendant during a custodial interrogation unless proper *Miranda* warnings have been given. *State v. King*, 179 Ohio App.3d 1, 7, 2008-Ohio-5363, 900 N.E.2d 645 (2d Dist.); See, *State v. Mason*, 82 Ohio St.3d 144, 153, 694 N.E.2d 932 (1998) (stating that "[o]nly a custodial interrogation triggers the need for a *Miranda* rights warning"). Thus, the threshold issue is whether Curtis was in custody at all, especially since no formal arrest had yet occurred. "In judging whether an individual has been placed into custody the test is whether, under the totality of the circumstances, a 'reasonable person would have believed that he was not free to leave.'" *State v. Gumm*, 73 Ohio St.3d 413, 429, 1995-Ohio-24, 653 N.E.2d 253.

{¶ 14}  The following factors have been used to assess how a reasonable person in the defendant's situation would understand his situation:

1.  What was the location where the questioning took place – i.e., was the defendant comfortable and in a place a person would normally feel free to leave?  For example, the defendant might be at home as opposed to being in the more restrictive environment of a police station;

2.  Was the defendant a suspect at the time the interview began (bearing in mind that *Miranda* warnings are not required simply because the investigation has focused);

3.  Was the defendant's freedom to leave restricted in any way;

4.  Was the defendant handcuffed or told he was under arrest;

5.  Were threats made during the interrogation;

6.  Was the defendant physically intimidated during the interrogation;

7.  Did the police verbally dominate the interrogation;

8.  What was the defendant's purpose for being at the place where questioning took place?  For example, defendant might be at a hospital for treatment instead of being brought to the location for questioning;

9.  Were neutral parties present at any point during the questioning;

> 10. Did police take any action to overpower, trick or coerce
>
> the defendant into making a statement.

*State v. McCrary*, 2d Dist. Montgomery No. 16279, 2002 WL 125760,

(February 1, 2002).

**{¶ 15}** Initially, we note that when he asked Curtis to come to the DCSO to be interviewed, Det. Hawes was characterized by the trial court as "well mannered, cordial, and patient." Moreover, the trial court found that Det. Hawes made no threats or coercive statements in order to induce Curtis to attend the interview. Det. Hawes also informed Curtis that the interview was entirely voluntary, and regardless of what information was disclosed during the interview, Curtis was free to go afterwards and would not be arrested. Det. Hawes concluded the initial brief phone conversation by telling Curtis which building to come to at the DCSO and advising him to be careful because the roads were icy that day.

**{¶ 16}** Upon arriving at the DCSO, Det. Hawes greeted Curtis, who had been driven there by his mother. Det. Hawes led Curtis through two sets of security doors before they reached the interview room. Det. Hawes testified that while the security doors were locked on the outside, the doors were not locked from the inside. Moreover, Det. Hawes testified that he informed Curtis before they reached the interview room that he was free to leave at any point before or during their interview. Once they reached the interview room, Det. Hawes shut the door to the room for privacy but told Curtis that the door was not locked so he could leave if he became uncomfortable or did not want to talk anymore. Curtis was not handcuffed or restrained in any way.

**{¶ 17}** At the very beginning of the interview, Det. Hawes informed Curtis that he

was recording their entire conversation and reiterated that regardless of what they talked about, Curtis was not under arrest nor would he be arrested that day. Det. Hawes provided Curtis with coffee and asked him several introductory questions. Curtis stated that he was fifty-two years of age at the time of the interview, and that he was not intoxicated or under the influence of any substance that would interfere with his ability to understand Det. Hawes' questions. The trial court specifically found that Det. Hawes was "always well mannered, cordial, and patient." Although the trial court found that Det. Hawes was "mildly insistent about the urgent need to talk," he did not force Curtis to attend the interview and repeatedly told him that he would be free to leave after the interview.

{¶ 18} The recording of the interview which was admitted as State's Exhibits 1 and 2, reveals a tone set by Det. Hawes which was very conversational. Det. Hawes did not threaten or coerce Curtis in any way, and the interview concluded within one hour. At the end of the interview, Det. Hawes spoke with Curtis' mother for about twenty minutes. Their conversation was also recorded. While it is true that Curtis was the prime suspect in the sexual abuse of the young girls, this fact, standing alone, does not weigh heavily in favor of finding that a custodial interrogation took place. Despite the fact that Curtis was interviewed by a police detective in an interview room in a sheriff's office, he was never in custody nor was he placed under arrest. Moreover, at the end of the interview, Curtis left the building with his mother. We conclude that an objectively reasonable person in Curtis' position would not have understood himself to be in custody, and *Miranda* warnings were, therefore, not required.

{¶ 19} Upon review, it is also clear that Curtis' admissions were voluntarily made,

and were not induced by threats or promises. Curtis was allowed to sit closest to an unlocked door and was permitted to leave at the end of the interview. Curtis stated that he was not under the influence of any substance which affected his ability to understand Det. Hawes' questions. The interview was not of an extreme duration, nor was it physically exhausting. Throughout the recording of the interview, it is apparent that Det. Hawes did not attempt to manipulate or deceive Curtis. While he did seem to be suffering from a minor respiratory problem, Curtis' answers were both coherent and responsive. The non-coercive nature of the interview is best exemplified in the following exchange between Det. Hawes and Curtis:

> Det. Hawes: Well, you're free to go, just like you were when you
> first walked in the door. Actually, I have another question. Do you
> feel like I held a hammer over your head, and tried to force you
> to talk to me today?
> Curtis: No.
> ***

{¶ 20} In light of the foregoing, we find that the interview conducted by Det. Hawes was non-custodial in nature, and *Miranda* warnings were, therefore, unnecessary. Additionally, the record establishes that Curtis' will was not overborne during the interview, and his admissions were made in a knowing and voluntary fashion. Accordingly, the trial court did not err when it overruled Curtis' motion to suppress.

{¶ 21} Curtis' sole assignment of having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . .

GRADY, P.J. and FROELICH, J., concur.

Copies mailed to:

R. Kelly Ormsby, III
Paul Wagner
Hon. Jonathan P. Hein