[Cite as *State v. Marshall*, 2021-Ohio-816.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NOS. C-190748 |
| | | C-190758 |
| Plaintiff-Appellee, | : | TRIAL NO. B-1806939C |
| vs. | : | |
| ANTHONY MARSHALL | : | *O P I N I O N.* |
| Defendant-Appellant. | : | |

Criminal Appeals From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed in Part, Reversed in Part, and Cause Remanded in C-190748; Appeal Dismissed in C-190758

Date of Judgment Entry on Appeal:  March 17, 2021

*Joseph T. Deters,* Hamilton County Prosecuting Attorney, and *Alex Scott Havlin*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Timothy J. McKenna*, for Defendant-Appellant.

**CROUSE, Judge.**

{¶1}    Defendant-appellant Anthony Marshall was convicted of nine counts related to possession of and trafficking in various drugs and having a weapon while under a disability. On December 20, 2019, Marshall's counsel filed a notice of appeal in the case numbered C-190748. On December 31, 2019, Marshall, acting pro se, filed a notice of appeal in the case numbered C-190758. Both appeals arose from Marshall's convictions for the offenses described above in the trial court case numbered B-1806939C.  Therefore, the appeal numbered C-190758 is dismissed.

{¶2}    In the appeal numbered C-190748, Marshall presents six assignments of error for our review.  He contends: (1) the state failed to disclose evidence in a timely manner, depriving him of his due-process rights under the United States Constitution and Ohio Constitution; (2) the court erred in denying his motion for a mistrial; (3) he was denied the effective assistance of trial counsel; (4) his convictions were based upon insufficient evidence; (5) his convictions were against the manifest weight of the evidence; and (6) the record does not support the sentences imposed by the court.

{¶3}    We sustain the sixth assignment of error as it relates to the imposition of consecutive sentences and remand for a new sentencing hearing on that issue alone. All other assignments of error are overruled, and the remainder of the trial court's judgment is affirmed.

### *Factual Background*

{¶4}    Sergeant Pitchford, the supervisor of a team of law enforcement agents with the Regional Narcotics Unit ("RENU"), testified that RENU obtained a search

warrant for a home on the west side of Cincinnati after receiving complaints from neighbors about drug-trafficking activities. He and other RENU agents surveilled the home and observed a vehicle, later discovered to belong to Marshall, pull into the home's garage. Pitchford ordered the agents to execute the search warrant. Upon entering the house they observed two women sitting at the kitchen table with drugs. The women informed the agents that Marshall was downstairs.

{¶5} Agent Kassem testified that he was the first to enter the basement, where he observed Marshall walking away from one of the back rooms. He arrested Marshall and then observed several little baggies of drugs approximately ten feet away, lying on the basement floor, and near one of the back rooms. The agents searched Marshall and discovered a cell phone and $900 in cash. They searched Marshall's car and discovered a firearm hidden in the door jamb between the driver's seat and the rear seat and a second cell phone.

{¶6} Agents Kassem and Davis testified that Marshall orally waived his *Miranda* rights and agreed to be interviewed. They chose not to record the interview. Kassem and Davis testified that Marshall admitted the drugs and the firearm were his.

### *First and Second Assignments of Error*

{¶7} We address the first and second assignments of error together. In his first assignment of error, Marshall argues that the state failed to disclose evidence in a timely manner, depriving him of his due-process rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and Article I of the Ohio Constitution. In his second assignment of error, he argues that the trial court erred in denying his motion for a mistrial.

{¶8} Two exhibits and the failure to record the interview form the basis of Marshall's argument. The state did not provide the defense with Agent Davis's interview notes (exhibit seven) until 11:00 a.m. on September 24, with voir dire beginning that afternoon. At the top of the interview notes, it was written that the interview began at "11:08," which was crossed out and replaced with "11:26." The *Miranda* rights waiver form (exhibit six) stated that Marshall was advised of his *Miranda* rights at 11:23. Marshall did not sign the rights waiver form. Kassem and Davis testified that Marshall orally waived his *Miranda* rights, but did not want to sign the form and create a "paper trail" that might allow people to find out that he was talking to the police.

{¶9} Defense counsel did not notice the time discrepancy on the interview notes until September 25, after opening statements and the state had already begun its case-in-chief. On the morning of September 26, counsel moved for a continuance so that he could file a motion to suppress Marshall's incriminating statements, or, in the alternative, a mistrial. Counsel argued that if the agents had interviewed Marshall prior to advising him of his *Miranda* rights, then any incriminating statements should be excluded. The problem was, Agent Kassem had already testified to some of Marshall's incriminating statements.

{¶10} The court found that a motion to suppress would be inappropriate at that point, because Marshall's incriminating statements had already been presented, and denied the motion for a continuance. The court also denied the motion for a mistrial. It stated that defense counsel would have the ability to question Davis on the time discrepancy between exhibits six and seven and object to their admission. Ultimately, the court admitted both exhibits without objection.

{¶11} Regarding the decision to not record the interview, Agent Fangman testified that the purpose of the interview was not to gather evidence against Marshall, but to gather evidence about others in Marshall's criminal organization. He explained that the interview went unrecorded for Marshall's safety since he was a potential informant and the agents did not want to create a recording that could later end up in the hands of anyone he informed on.

{¶12} First, Marshall contends that the state's failure to timely provide the interview notes violated the *Brady* rule, which requires the prosecution to disclose exculpatory evidence to the defense. *See Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) ("[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."). But, there can be no *Brady* violation when the exculpatory information was provided to the defense before or even during the trial. *State v. Wickline*, 50 Ohio St.3d 114, 116, 552 N.E.2d 913 (1990), citing *United States v. Agurs* 427 U.S. 97, 103, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). This court recently explained that "a defendant is not prejudiced where the exculpatory material is discovered before or during trial and there are other remedies available which allow the exculpatory material to be entered into evidence." *State v. Jones*, 1st Dist. Hamilton No. C-180091, 2019-Ohio-4862, ¶ 60, citing *State v. Aldridge*, 120 Ohio App.3d 122, 146, 697 N.E.2d 228 (2d Dist.1997). Because the interview notes were provided the day trial was scheduled to begin, and there were other remedies available to the defense to make use of that information, there was no *Brady* violation in this case.

{¶13} Next, Marshall argues that the state violated Crim.R. 16, and therefore, his motion for a mistrial should have been granted.

{¶14} Crim.R. 16 governs discovery in criminal cases. "The overall objective of the criminal rules is to remove the element of gamesmanship from a trial. The purpose of the discovery rules is to prevent surprise and the secreting of evidence favorable to one party." (Citations omitted.) *State v. Darmond*, 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971, ¶ 19.

{¶15} Upon discovery of a violation of Crim.R. 16, a trial court may order a mistrial, or any "other order as it deems just under the circumstances," but "only after inquiring into the circumstances surrounding the violation." *State v. Simmons*, 2014-Ohio-3695, 19 N.E.3d 517, ¶ 41-42 (1st Dist.), quoting *Darmond* at ¶ 33.

> In *State v. Parson*, 6 Ohio St.3d 442, 453 N.E.2d 689, syllabus (1983) [the Supreme Court] established three factors that should govern a trial court's exercise of discretion in imposing a sanction for a discovery violation committed by the prosecution. The three *Parson* factors a judge should consider are (1) whether the failure to disclose was a willful violation of Crim.R. 16, (2) whether foreknowledge of the undisclosed material would have benefited the accused in the preparation of a defense, and (3) whether the accused was prejudiced.

*Darmond* at ¶ 35.

{¶16} The court " 'must impose the least severe sanction that is consistent with the purpose of the discovery rules.' " *Simmons* at ¶ 42. We review the trial court's decision for an abuse of discretion. *Id.* at ¶ 51.

{¶17} Knowledge on the part of a law enforcement officer is imputed to the state, but a determination of willfulness focuses only on the acts of the prosecution. *Id.* at ¶ 45. Marshall does not claim that the state intentionally withheld the notes, and the record shows that it was Davis's negligence that led to their late disclosure. There is no evidence that the late disclosure of the interview notes was a willful violation.

{¶18} Next, we must determine whether knowledge of the interview notes earlier than the day trial was scheduled to begin would have benefitted Marshall in preparing his defense. Counsel had prior notice that the agents would testify that Marshall admitted to owning the drugs and the firearm and the agents did not record the interview. Therefore, earlier knowledge of the interview notes would not have changed his theory of defense. However, if the notes had been turned over in a timely manner, defense counsel would have had more time to review the notes, catch the discrepancy regarding the *Miranda* warning, prepare for cross-examination of the agents, and file a motion to suppress Marshall's statements prior to trial.

{¶19} Finally, we must determine whether Marshall suffered prejudice as a result of the discovery violation. To establish prejudice, a defendant must demonstrate that a reasonable probability exists that but for the discovery violation, the result of the trial would have been different. *See State v. White*, 82 Ohio St.3d 16, 23, 693 N.E.2d 772 (1998) (discussing prejudice as it pertains to a claim of ineffective assistance of counsel); *United States v. Ross*, 703 F.3d 856, 880 (6th Cir.2012) (discussing prejudice as it pertains to a *Brady* violation).

{¶20} Davis testified that he was not sure why he crossed out 11:08 and wrote 11:26, but that perhaps they started the interview later than anticipated. He and

Kassem both testified that they advised Marshall of his *Miranda* rights before they started the interview.

{¶21} A discovery violation is not prejudicial where it was not willful and the evidence was disclosed in sufficient time for the defendant to effectively use it at trial. *Simmons*, 2014-Ohio-3695, 19 N.E.3d 517, at ¶ 1. The most effective use of the interview notes would have been a pretrial motion to suppress, which Marshall's counsel did not file because he received the notes a mere two hours before trial. However, defense counsel effectively used the interview notes by cross-examining Davis on the time discrepancy and pointing it out to the jury during closing argument.

{¶22} Marshall's argument that the motion to suppress would have "likely" been granted is speculative. The time discrepancy and lack of a recording do raise some suspicion that Marshall's *Miranda* rights may have been violated. But Davis and Kassem both testified that they advised Marshall of his *Miranda* rights prior to interviewing him. Presumably, they would have testified the same way at a suppression hearing. In granting a motion to suppress, the trial court would have had to find that Davis and Kassem lacked credibility. Marshall has failed to show that there is a reasonable probability that the trial court would have granted the motion to suppress. Without a reasonable probability that the statements would have been suppressed, we cannot say that the court abused its discretion in denying the motion for a mistrial.

{¶23} Marshall also claims that the violation of Crim.R. 16 violated fundamental fairness and the Due Process Clause. "There is no general

constitutional right to discovery in a criminal case * * *." *State v. Hale*, 119 Ohio St.3d 118, 2008-Ohio-3426, 892 N.E.2d 864, ¶ 120. No due-process issue exists here.

{¶24} The first and second assignments of error are overruled.

### Third Assignment of Error

{¶25} In his third assignment of error, Marshall contends that he was denied the effective assistance of trial counsel as guaranteed by the Article I, Section 10 of the Ohio Constitution and the Sixth and Fourteenth Amendments to the United States Constitution.

{¶26} To establish an ineffective-assistance-of-counsel claim, an appellant must show (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense, thereby depriving appellant of a fair trial. *State v. Smith*, 1st Dist. Hamilton No. C-180151, 2019-Ohio-5264, ¶ 63, citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

{¶27} Marshall must show that counsel's errors were "so serious that counsel was not functioning as the 'counsel' guaranteed * * * by the Sixth Amendment." *See Strickland* at 687. Debatable trial tactics do not demonstrate deficient performance and "do not constitute a deprivation of the effective assistance of counsel." *Smith* at ¶ 63, citing *State v. Clayton*, 62 Ohio St.2d 45, 49, 402 N.E.2d 1189 (1980).

{¶28} Regarding the second prong, prejudice requires that there be "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *State v. Bradley*, 42 Ohio St.3d 136, 142, 538 N.E.2d 373 (1989), citing *Strickland* at 687. This requires a showing that counsel's errors were "so serious as to deprive the defendant of a fair trial." *Strickland* at 687.

{¶29} Marshall claims that his trial counsel was ineffective for not filing a motion to suppress or asking for a continuance after he received Davis's interview notes.

{¶30} The interview notes are less than half a page long and contain a very brief summary of the interview. Counsel was aware that Davis and Kassem would testify that Marshall made incriminating statements. The notes would not have provided new or surprising information. Therefore, counsel had no reason to believe that a continuance was necessary when he first received the notes. Once he realized that there was a time discrepancy in the notes, he did ask for a continuance. Counsel's performance was not deficient. *See Strickland,* 466 U.S. at 689, 104 S.Ct. 2052, 80 L.Ed.2d 674 ("[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time").

{¶31} Also, Marshall has failed to demonstrate that there is a reasonable probability that a motion to suppress would have been granted. Thus, he has not demonstrated prejudice. The third assignment of error is overruled.

### Fourth Assignment of Error

{¶32} In his fourth assignment of error, Marshall contends that his convictions were based upon insufficient evidence.

{¶33} The test for determining the sufficiency of the evidence is whether "after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt." *State v.*

*MacDonald*, 1st Dist. Hamilton No. C-180310, 2019-Ohio-3595, ¶ 12, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). It is a question of law for the court to determine, the court is not to weigh the evidence. *MacDonald* at ¶ 12. "When evidence is susceptible to more than one construction, a reviewing court must give it the interpretation that is consistent with the judgment." *In re J.C.,* 1st Dist. Hamilton No. C-180493, 2019-Ohio-4027, ¶ 20.

{¶34} In order to convict Marshall of the trafficking counts, the state had to prove that he knowingly prepared for shipment, shipped, transported, delivered, prepared for distribution, or distributed cocaine, heroin, and fentanyl-related compounds, when he knew or had reasonable cause to believe that the cocaine, heroin, and fentanyl-related compounds, were intended for sale or resale by him or another person. *See* R.C. 2925.03(A)(2).

{¶35} To convict Marshall of the possession of cocaine, heroin, and fentanyl-related compounds, the state was required to prove that he knowingly obtained, possessed, or used cocaine, heroin, and fentanyl-related compounds. *See* R.C. 2925.11(A).

{¶36} To convict Marshall of aggravated possession of drugs, the state had to prove that he knowingly obtained, possessed, or used methamphetamine. *See* R.C. 2925.11(A) and 2925.11(C)(1).

{¶37} To convict Marshal of possession of drugs, the state was required to prove that he knowingly obtained, possessed, or used buprenorphine, and that he was previously convicted of a drug-abuse offense. *See* R.C. 2925.11(A) and 2925.11(C)(2)(a).

{¶38} Finally, to convict Marshall of having a weapon while under a disability, the state had to prove that he knowingly acquired, had, carried, or used a firearm after being convicted of a felony drug-abuse offense. *See* R.C. 2923.13(A)(3).

{¶39} Marshall argues that the state failed to present sufficient evidence that he possessed or trafficked any of the drugs. Regarding the charge for having a weapon while under a disability, Marshall stipulated to a prior felony conviction for a drug-abuse offense, but argues that the state failed to prove that he possessed the firearm.

{¶40} Kassem testified that after arresting Marshall he observed several little baggies containing drugs approximately ten feet away from Marshall, in the area where Marshall had just been. Agents found the firearm hidden in the door jamb of his car. Kassem and Davis testified that Marshall admitted ownership of the drugs and the firearm.

{¶41} Regarding the trafficking convictions, Kassem and Davis testified that when drugs are packaged in small individual baggies, as was the case here, that is a sign that the drugs were being prepared for distribution. *See State v. Anderson*, 4th Dist. Highland No. 18CA14, 2019-Ohio-395, ¶ 19. Marshall was arrested with over $900 in cash on his person, and two cell phones, both of which are indicative of trafficking. *See State v. Parks*, 3d Dist. Seneca Nos. 13-19-18 and 13-19-19, 2020-Ohio-145, ¶ 27 (multiple cell phones is indicative of drug trafficking); *State v. Hall*, 11th Dist. Erie Nos. 2019-L-027 and 2019-L-031, 2019-Ohio-4000, ¶ 45 (large amount of cash indicative of trafficking); *State v. Martin*, 5th Dist. Richland No. 17CA90, 2018-Ohio-3903, ¶ 47 (firearms, scales, baggies, and large amounts of

currency are indicators of trafficking). The convictions were based upon sufficient evidence. The fourth assignment of error is overruled.

### Fifth Assignment of Error

{¶42} In his fifth assignment of error, Marshall contends that his convictions were against the manifest weight of the evidence. In reviewing such a claim, "we review the record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the trier of fact, in resolving conflicts in the evidence, 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned.' " *Martin* 20 Ohio App.3d at 175, 485 N.E.2d 717. Reversal of a conviction and a grant of a new trial should only be done in "exceptional cases in which the evidence weighs heavily against the conviction." *Id.*

{¶43} "The trier of fact is in the best position to judge the credibility of the witnesses and the weight to be given to the evidence presented." *State v. Carson*, 1st Dist. Hamilton No. C-180336, 2019-Ohio-4550, ¶ 16.

{¶44} Marshall did not present any evidence in his defense. He complains of the agents' decision to not record the interview, and the lack of physical evidence corroborating their testimony. Agent Fangman testified that it would have been a waste of resources to send the baggies or firearm for DNA testing or fingerprinting, because Marshall admitted the drugs and firearm were his. There is no requirement that interviews of suspects be recorded, and the jury was free to reject the agents' testimony regarding Marshall's admissions. We are not persuaded that the jury clearly lost its way and created a manifest miscarriage of justice. The fifth assignment of error is overruled.

### Sixth Assignment of Error

**{¶45}** In his sixth assignment of error, Marshall contends that the record does not support the court's decision to impose consecutive sentences and that the court did not make the consecutive-sentencing findings required by R.C. 2929.14(C)(4).

**{¶46}** We review criminal sentences pursuant to R.C. 2953.08(G)(2):

The appellate court may [increase, reduce, otherwise modify, or vacate a sentence] if it clearly and convincingly finds either of the following:

(a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;

(b) That the sentence is otherwise contrary to law.

**{¶47}** Marshall does not challenge the length of any of his individual sentences. He challenges the trial court's decision to run the sentences consecutively, arguing that consecutive sentences violated the principles and purposes of sentencing delineated in R.C. 2929.11 and 2929.12 and that the record does not support consecutive sentences.

**{¶48}** Consecutive sentences are reviewed solely under R.C. 2953.08(G)(2)(a). *State v. Gwynne*, 158 Ohio St.3d 279, 2019-Ohio-4761, 141 N.E.3d 169, ¶ 16. Therefore, we only consider whether the record supports the sentencing court's findings under R.C. 2929.14(C)(4). *Id.* at ¶ 18. We do not review consecutive sentences under R.C. 2929.11 or 2929.12. *Id.*

**{¶49}** "Imposition of consecutive sentences is proper only when the trial court makes the findings required by R.C. 2929.14(C)(4) at the sentencing hearing and incorporates its findings into its sentencing entry." *State v. Jackson*, 1st Dist. Hamilton Nos. C-180245 and C-180246, 2019-Ohio-3299, ¶ 27, citing *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 37. The court is not obligated to state reasons to support its findings and no "talismanic incantation" of the words of R.C. 2929.14(C)(4) is required. *Jackson* at ¶ 27. As long as we can discern that the trial court engaged in the correct analysis and the record contains evidence to support the findings, consecutive sentences will be upheld. *Id.*

**{¶50}** R.C. 2929.14(C)(4) requires the trial court to make three findings: consecutive service is necessary to protect the public from future crime or to punish the offender *and* that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, *and* if the court also finds any of the following:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the

15

courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

(Emphasis added.)

**{¶51}** In its sentencing entry, the court made all three findings. However, the court failed to make all three findings at the sentencing hearing. It stated:

The rest of these terms will be served consecutive to each other, based on your history and based on the fact that your conduct is serious and poses a danger to the public. And the harm caused by two or more of these offenses was so great or unusual no single prison term for any one of the offenses committed as one or more course of conduct would adequately reflect the seriousness of your conduct.

Mr. Marshall, I want to add, that you have a number of these type cases in your history, quite a few. Plus, you went to prison for two years on a weapons under just a few years ago, and then we have the same * * * I do not take weapons lightly. I do not take weapons coupled with drugs lightly.

**{¶52}** The court made two out of the three findings, but did not say anything regarding proportionality. The most we can say regarding proportionality is that the court considered Marshall's conduct "serious." Such a statement is insufficient for us to conclude that the court made the second finding. *See Jackson*, 1st Dist. Hamilton Nos. C-180245 and C-180246, 2019-Ohio-3299, at ¶ 32-34. Where the trial court

fails to make a required finding at a sentencing hearing for consecutive sentences under R.C. 2929.14(C)(4), the proper remedy is to remand for a new hearing. *Jackson* at ¶ 44.

### *Conclusion*

{**¶53**} The sixth assignment of error is sustained with regard to the imposition of consecutive sentences. In the appeal numbered C-190748, we vacate the consecutive nature of the sentences and remand for a new sentencing hearing on that issue alone. All other assignments of error are overruled and the remainder of the trial court's judgment is affirmed. The appeal numbered C-190758 is dismissed.

Judgment accordingly.

**BERGERON, P.J.,** and **WINKLER, J.,** concur.

Please note:
The court has recorded its own entry on the date of the release of this opinion.

17