[Cite as *State v. Blair*, 2024-Ohio-1061.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| v. | : | No. 112388 |
| DOMINIQUE BLAIR, | : | |
| Defendant-Appellant. | : | |

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** March 21, 2024

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-21-665038-A

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Carla B. Neuhauser, Assistant Prosecuting Attorney, *for appellee.*

Joseph V. Pagano, *for appellant.*

SEAN C. GALLAGHER, J.:

{¶ 1} Appellant Dominique Blair ("appellant") appeals her convictions in this case and the trial court's denial of her motions for a mistrial. Upon review, we affirm.

### I.    Background

{¶ 2} On November 23, 2021, appellant was charged in a 13-count indictment with offenses stemming from an alleged shootout incident that occurred on October 27, 2021. The incident, which was captured on surveillance videos, involved appellant and James Morris and occurred in the Carver Park Estates in Cleveland. The case proceeded to a jury trial.

{¶ 3} In the surveillance videos, appellant and Morris are seen separately walking up and down Louise Harris Drive between the cross streets of Dandridge Circle and Bohn Road. At approximately 5:52:30 in the video footage, appellant is walking northbound ahead of Morris with what appears to be a handgun in her right hand. After they exit the screen, appellant reappears walking southbound at the intersection of Louise Harris Drive and Bohn Road. She points her handgun behind her with her right arm fully extended. She also has a long, rectangular box in her left hand. Morris enters the screen walking on the opposite side of the street, he pulls the hood of his sweatshirt over his head, and he has what appears to be a handgun in his right hand. The two continue walking southbound on opposite sides of the street, and appellant appears to brandish her handgun at Morris. As appellant is approaching the rear side of her home and passing the passenger side of a white Hyundai Sonata parked in the street, Morris is seen crossing the street and appears to discharge his firearm toward appellant. Appellant ducks down by the passenger side of the white Hyundai and turns to her left so that she is looking back at Morris. Appellant then stands a little further back and turns toward Morris, who reacts by ducking behind the rear of the white Hyundai. Morris is then seen running off.

Appellant next appears exiting the front door of her home with several children while holding a rifle in her hand, and she peers around the corner of her home. She then exits the back door without the rifle and walks around the street, stopping at the white Hyundai, which was being inspected by the owner's husband. Nobody was injured during the incident.

{¶ 4} The Cleveland Metropolitan Housing Authority police arrived at the scene after resident Dwan Poage ("Poage") called 911 to report that a bullet had come through her home and that she heard "two different guns." Officer David Whitney, who responded to the scene, testified that he observed a bullet that had entered Poage's home and embedded itself in a wall. He followed the trajectory of the bullet across the street in the direction of the white Hyundai. The vehicle had sustained damage from bullet holes on the passenger side of the car, which appellant had been facing. The police found two 9 mm shell casings near the rear of appellant's home in the area where appellant was retreating to her home. Those shell casings were not linked to any weapon involved in the incident. The rear window of appellant's home also was broken. Appellant informed the police that the window had just been shot out. Officer Whitney surmised from his observations that crossfire had occurred.

{¶ 5} Detective Ashley Jaycox testified to the investigation of the shootout incident. The detective reviewed the video footage and testified that it appeared that Morris "fired what appeared to be one, possibly two rounds toward [appellant,]" that it appeared appellant was "firing back," and that Morris's "ducking behind the white

Hyundai" was "indicative of him being shot at." Detective Jaycox also noted the bullet defects on the passenger side of the white Hyundai and in Poage's home, as well as the shell casings found in the area where appellant was retreating to her home.

{¶ 6} The police were not able to locate a handgun attributed to appellant, and they did not locate any firearms in appellant's home or in her car when she was arrested on November 5, 2023. Morris was not arrested until November 12, 2021. During his arrest, the police recovered a rifle and a 9 mm handgun, along with other items. A spent shell casing was recovered from Morris's vehicle, which matched the 9 mm handgun that was recovered in conjunction with his arrest. Detective Jaycox testified that the two shell casings found at the scene of the shootout incident did not match that handgun. Other testimony and evidence were presented in the matter.

{¶ 7} During Detective Jacox's testimony, it was revealed during a sidebar discussion that there were reports the state had not turned over to the defense that showed the 9 mm shell casings recovered at the scene of the incident did not match the 9 mm handgun recovered at the time of Morris's arrest. Detective Jaycox indicated that "[t]here should be an Operability Report," "the ATF Trace Report," and "a NIBIN entry report."[1] As a result of the discovery violation, the trial court

---

[1] The detective indicated that the "NIBIN" is "a national database of shell casings."

excluded those records. The trial court denied appellant's motion for a mistrial and her renewed motion for a mistrial.

{¶ 8} At the close of the state's case, the trial court dismissed Count 9 for endangering children at the state's request. The trial court granted appellant's Crim.R. 29 motion for acquittal only as to Count 12 for endangering children, but the court denied the Crim.R. 29 motion and a renewed Crim.R. 29 motion as to the remaining counts.

{¶ 9} The jury returned a verdict of guilty of felonious assault (Count 1); two counts of improperly discharging a firearm at or into a habitation (Counts 4 and 5); discharging a firearm on or near a prohibited premises (Count 6); endangering children (Counts 10 and 11); and criminal damaging (Count 13); and associated one- and three-year firearm specifications on Counts 1, 4, 5, and 6. The jury found appellant not guilty of Counts 2 and 3 for felonious assault and Count 8 for carrying a concealed weapon. The trial court found appellant guilty of having a weapon while under a disability (Count 7).

{¶ 10} Appellant filed a post-trial motion to declare a mistrial and to set aside the jury verdict and for a new trial. A hearing was held, and the trial court denied the motion. The trial court proceeded to sentencing. The aggregate-total prison sentence imposed was eight years.

{¶ 11} Appellant timely filed this appeal. She raises three assignments of error for review.

## II. ANALYSIS

{¶ 12} Under her first assignment of error, appellant claims the trial court erred by denying her motions for mistrial. Appellant argues that the state violated Crim.R. 16 by failing to provide discovery material before trial. The undisclosed information included reports and/or test results that showed the two shell casings found at the scene of the incident did not match the handgun found in conjunction with Morris's arrest. As a result of the discovery violation, the trial court excluded the records. Appellant's motions for a mistrial were denied.

{¶ 13} Pursuant to Crim.R. 16, when a discovery violation is brought to the attention of the court, the court may make any order it deems "just under the circumstances." Crim.R. 16(L)(1). The trial court is to inquire into the circumstances of the alleged discovery violation and is required to impose "the least severe sanction that is consistent with the purpose of the rules of discovery." *State v. Parker*, 53 Ohio St.3d 82, 86, 558 N.E.2d 1164 (1990), citing *Lakewood v. Papadelis*, 32 Ohio St.3d 1, 511 N.E.2d 1138 (1987). The trial court has discretion in determining an appropriate sanction. *See State v. Parson*, 6 Ohio St.3d 442, 445, 453 N.E.2d 689 (1983). Our review of the trial court's determination is for an abuse of discretion. *State v. Marshall*, 1st Dist. Hamilton Nos. C-190748 and C-190758, 2021-Ohio-816, ¶ 16.

{¶ 14} The Supreme Court of Ohio has set forth three factors that should govern a trial court's exercise of discretion in imposing a sanction for a discovery violation committed by the prosecution. *See State v. Darmond*, 135 Ohio St.3d 343,

2013-Ohio-966, 986 N.E.2d 971, ¶ 35, citing *Parson* at syllabus. Those factors include "(1) whether the failure to disclose was a willful violation of Crim.R. 16, (2) whether foreknowledge of the undisclosed material would have benefited the accused in the preparation of a defense, and (3) whether the accused was prejudiced." *Id.,* citing *Parson* at syllabus. However, a mistrial should be granted "only when justice requires and a fair trial is no longer possible." *State v. Madison*, 160 Ohio St.3d 232, 2020-Ohio-3735, 155 N.E.3d 867, ¶ 196, citing *State v. Cepec*, 149 Ohio St.3d 438, 2016-Ohio-8076, 75 N.E.3d 1185, ¶ 89; *see also State v. Franklin*, 62 Ohio St.3d 118, 127, 580 N.E.2d 1 (1991); *Parker* at 86, citing *Hughes v. Hopper*, 629 F.2d 1036, 1039 (5th Cir.1980).

{¶ 15} The record herein does not demonstrate that the prosecution's nondisclosure of discovery materials was willful. Further, it defies logic for appellant to suggest the nondisclosed evidence would have offered a new defense strategy or have benefited the accused in preparing her defense. The video evidence in this case depicted appellant with what appeared to be a handgun and her interaction with Morris. There were bullet holes to the passenger side of the white Hyundai appellant was facing, a bullet embedded in Poage's home across the street, a 911 call reporting hearing two different guns, and two shell casings found near the rear of appellant's home. The defense was aware that the police did not recover a firearm associated with appellant and that the two shell casings, which had been made available for inspection, were never connected to any firearm. Despite the evidence, the defense theory was always that "she didn't shoot." The fact that the

two shell casings did not match the firearm found at the time of Morris's arrest is of no consequence. The shell casings could have come from any 9 mm handgun, and as Detective Jaycox testified, the shell casings are not even needed to conclude that a shooting took place. The test results simply do not alter the essential facts in this case. Additionally, there was little, if any, prejudice to appellant from the nondisclosure of the reports and/or test results. The trial court took remedial measures and excluded the undisclosed records from use at trial, the detective was effectively cross-examined, and there is nothing in the record to indicate that had the reports and/or test results been disclosed prior to trial, the result of the proceeding would have been different.[2]

{¶ 16} Finally, although a discovery violation occurred, the trial court properly exercised its discretion by imposing the least severe sanction consistent with the purposes of the criminal discovery rules. As the trial court indicated, it "took the least heavy-handed approach to this by excluding those records." In the end, because appellant was not prevented from receiving a fair trial, a mistrial was wholly unwarranted. Upon our review, it cannot be said that there was any abuse of discretion by the trial court.

{¶ 17} We also do not find any abuse of discretion in the trial court's denial of appellant's request to set aside the verdict and for a new trial. The motion was filed outside the 14-day time frame permitted by Crim.R. 33. Further, the

---

[2] The circumstances of this case are wholly distinguishable from *State v. Wilson*, 30 Ohio St.3d 99, 507 N.E.2d 1109 (1987), which is cited by appellant.

discretionary decision to grant a new trial "'is an extraordinary measure that should be used only when the evidence presented weighs heavily in favor of the moving party.'" *State v. Howard*, 8th Dist. Cuyahoga No. 101359, 2015-Ohio-2854, ¶ 45, quoting *State v. Price*, 8th Dist. Cuyahoga No. 92096, 2009-Ohio-480, ¶ 14. This is not such a case.

{¶ 18} Insofar as appellant raises a due-process challenge, we recognize that "'[t]here is no general constitutional right to discovery in a criminal case * * *.'" *Marshall*, 1st Dist. Hamilton Nos. C-190748 and C-190758, 2021-Ohio-816, at ¶ 23, quoting *State v. Hale*, 119 Ohio St.3d 118, 2008-Ohio-3426, 892 N.E.2d 864, ¶ 120. We find no constitutional violation occurred in this matter. Additionally, there was no *Brady* violation. *See id.* at ¶ 12; *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Accordingly, the first assignment of error is overruled.

{¶ 19} Under her second assignment of error, appellant claims that the trial court erred by denying her motions for acquittal.

{¶ 20} "'A motion for acquittal under Crim.R. 29(A) is governed by the same standard as the one for determining whether a verdict is supported by sufficient evidence.'" *State v. Spaulding*, 151 Ohio St.3d 378, 2016-Ohio-8126, 89 N.E.3d 554, ¶ 164, quoting *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, 847 N.E.2d 386, ¶ 37. "'The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *Id.*, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the

syllabus. When evaluating the sufficiency of the evidence, a reviewing court considers "whether the evidence, 'if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt.'" *State v. Pountney*, 152 Ohio St.3d 474, 2018-Ohio-22, 97 N.E.3d 478, ¶ 19, quoting *Jenks* at paragraph two of the syllabus.

{¶ 21} A review of the record reflects that the actions of appellant and Morris were captured on video. Officer Whitney and Detective Jaycox testified to their observations of a crossfire or shootout situation. The video evidence showed that appellant was observed carrying, brandishing, and pointing a handgun as she was walking ahead of Morris. She also was observed exiting her home with a rifle in hand while surrounded by children. During the encounter with Morris, she was observed ducking behind the passenger side of the white Hyundai and turning toward Morris, as well as turning toward Morris as she retreated toward her home. Morris reacted by ducking behind the vehicle and then running off. The owner of the white Hyundai testified to hearing three loud shots outside her home. There were bullet holes in the passenger side of the white Hyundai, and a bullet passed through a home across the street and was lodged into a wall. The witness who was in that home called 911 and reported hearing two different guns. Officer Whitney testified to following the trajectory of the bullet in Poage's home toward the white Hyundai. The police found two 9 mm shell casings near the rear of appellant's home. Viewing this and the other evidence presented in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the

crimes for which appellant was convicted were proven beyond a reasonable doubt. The second assignment of error is overruled.

{¶ 22} Under her third assignment of error, appellant claims her convictions were against the manifest weight of the evidence.

{¶ 23} When evaluating a claim that a verdict is against the manifest weight of the evidence, "we review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that we must reverse the conviction and order a new trial." *State v. Wilks*, 154 Ohio St.3d 359, 2018-Ohio-1562, 114 N.E.3d 1092, ¶ 168, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). Reversing a conviction based upon the weight of the evidence should occur "'only in the exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 24} After reviewing the entire record, weighing the evidence and all reasonable inferences, and considering the credibility of the witnesses, we do not find the trial court clearly lost its way and created such a manifest miscarriage of justice that the adjudication must be reversed. Insofar as appellant challenges her conviction for having a weapon while under disability, which was tried to the bench, the trial court found appellant guilty on that count, which was reflected in the court's journal entry. Before the trial began, the trial court informed appellant that this

charge would be tried to the bench and noted appellant's prior conviction for aggravated assault, which appellant understood. Also, at the conclusion of trial, defense counsel stated, "I'm not objecting as to the Court considering [the] 2010 [prior conviction]." Further, although appellant challenges the testimony and evidence that was provided in the case, this is not the exceptional case in which the evidence weighs heavily against the conviction for the challenged offenses. The third assignment of error is overruled.

{¶ 25} Under her fourth assignment of error, appellant claims the trial court erred by allowing certain testimony and by admitting several exhibits over appellant's objections.

{¶ 26} Appellant argues that Detective Jaycox, who was not present at the scene, was permitted to narrate the surveillance video and to make identifications of persons in the video. Appellant further argues that the court allowed several exhibits to be admitted over objection. She references the guns and box recovered from Morris and photos of the vehicle driven by Morris at the time of his arrest.

{¶ 27} We find the video evidence was properly admitted under the silent witness theory pursuant to Evid.R. 901. *See State v. Ladson*, 8th Dist. Cuyahoga No. 111211, 2022-Ohio-3670, ¶ 21-22. Detective Jaycox testified to the camera locations, to pulling the surveillance videos, and to reviewing the videos during the detective's investigation. As the lead investigator, Detective Jaycox had adequate personal knowledge to testify as to the contents of the footage pursuant to Evid.R. 02. *See Ladson* at ¶ 44, citing *State v. Groce*, 2019-Ohio-1007, 133 N.E.3d

930, ¶ 46 (10th Dist.). Appellant cites no authority that supports her argument concerning the admission of the other evidence. It is not the role of an appellate court to search for case authority to support arguments on behalf of one of the parties. *See State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, ¶ 19, citing *State v. Bodyke*, 126 Ohio St.3d 266, 2010-Ohio-2424, 933 N.E.2d 753, ¶ 78 (O'Donnell, J., concurring in part and dissenting in part), quoting *Carducci v. Regan*, 714 F.2d 171, 177 (D.C.Cir.1983). Even if there was an error in this regard, it was harmless at best. *See* Crim.R. 52(A).

{¶ 28} We are unable to find any abuse of discretion by the trial court. The fourth assignment of error is overruled.

{¶ 29} We have considered all arguments raised by appellant and are not persuaded by any argument that is not specifically addressed herein.

{¶ 30} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
SEAN C. GALLAGHER, JUDGE

MICHAEL J. RYAN, J., CONCURS;
MARY EILEEN KILBANE, P.J., DISSENTS (WITH SEPARATE OPINION)

MARY EILEEN KILBANE, P.J., DISSENTING:

{¶ 31} I respectfully dissent from the majority opinion. I would find that the trial court should have granted a mistrial based upon the state's Crim.R. 16 discovery violation.

{¶ 32} The discovery violation was revealed when Detective Jaycox testified that (1) the 9 mm firearm and shell casings recovered from Morris were entered into the NIBIN system and (2) the state received test results that indicated two separate firearms were discharged on October 27, 2018. Detective Jaycox's testimony was defense counsel's first notice that any such testing was conducted; the state does not dispute that the referenced test results were never provided through discovery.

{¶ 33} Blair moved for a mistrial, both during and after trial, based upon the state's failure to disclose the test results in violation of Crim.R. 16. The essential inquiry on a motion for mistrial is whether the accused's substantial rights were adversely or materially affected. *State v. Johnson*, 8th Dist. Cuyahoga No. 108621, 2020-Ohio-2940, ¶ 24, citing *State v. Wilson*, 8th Dist. Cuyahoga No. 92148, 2010-

Ohio-550, ¶ 13, citing *State v. Reynolds*, 49 Ohio App.3d 27, 33, 550 N.E.2d 490 (2d Dist.1988). Further, Crim.R. 16 governs discovery and requires the prosecuting attorney to provide results of experiments and scientific tests. Crim.R. 16(B)(4). The purpose of the rule is "to provide all parties in a criminal case with the information necessary for a full and fair adjudication of the facts, to protect the integrity of the justice system and the rights of defendants, and to protect the well-being of witnesses, victims, and society at large." Crim.R. 16(A). The rule serves to ""prevent surprise and the secreting of evidence favorable to one party."" *Johnson,* 8th Dist. Cuyahoga No. 108621, 2020-Ohio-2940 at ¶ 26, quoting *Darmond*, 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971 at ¶ 19, quoting *Papadelis*, 32 Ohio St.3d 1, 511 N.E.2d 1138, at 3 (1987).

{¶ 34} An inquiry of a discovery violation should include three considerations referenced as the *Parson* factors: "(1) whether the [prosecution's] failure to disclose was a willful violation of Crim.R. 16, (2) whether foreknowledge of the undisclosed material would have benefited the accused in the preparation of a defense, and (3) whether the accused was prejudiced." *Darmond* at ¶ 35, citing *Parson*, 6 Ohio St.3d 442, 453 N.E.2d 689, at syllabus. A review of the evidence in relation to the *Parson* factors is necessary to determine the appropriate sanction for the discovery violation. *State v. Pagan*, 8th Dist. Cuyahoga No. 97268, 2012-Ohio-2197, ¶ 37, citing *State v. Wharton*, 4th Dist. Ross No. 09CA3132, 2010-Ohio-4775, ¶ 21.

{¶ 35} Here, the *Parson* factors demonstrate the appropriate sanction for the discovery violation was a mistrial. Detective Jaycox provided the test results to the assistant prosecuting attorney in charge of Morris's criminal case, believing the information would be shared with Blair's counsel. Detective Jaycox testified that the state's failure to provide the reports was unintentional. Testimony was introduced that in a separate, unrelated criminal matter, Assistant Prosecuting Attorney Neuhauser ("Neuhauser") — who was assigned to Blair's case — failed to share discovery prior trial; presumably this evidence was introduced to show a pattern of misconduct by Neuhauser. The testimony was insufficient to demonstrate Neuhauser's actions in the instant matter constituted a willful violation of Crim.R. 16.

{¶ 36} However, where the basis of Blair's defense was that she did not discharge a firearm on October 27, 2021 — a defense strategy known to the state — the tool mark report that confirmed a second firearm was discharged on the day of the alleged shooting would have benefitted Blair in the preparation of her defense. Jaycox conceded the tool mark report was significant to Blair's defense:

> DEFENSE COUNSEL: So you had to test it because it was possible at that point that they would match the gun that was recovered from Mr. Morris that would indicate perhaps that Ms. Blair hadn't fired a weapon, correct?
>
> JAYCOX: That's correct.
>
> DEFENSE COUNSEL: All right. So it could — that evidence, that very same evidence could be exculpatory and/or inculpatory, correct?
>
> JAYCOX: Correct.

DEFENSE COUNSEL: Which is why it's of key significance for Ms. Blair to know about, correct?

JAYCOX: Yes.

Tr. 648. While the case against Blair would have been submitted for prosecution even without the shell casings recovered at Carver Park, knowledge of the test results could have allowed Blair to adopt another defense strategy or approach the state's plea offer differently.

{¶ 37} Additionally, Blair was prejudiced by the Crim.R. 16 violation. Presumably defense counsel's questioning of Detective Jaycox would have been different if Blair knew about the test results before trial. Without prior notice of the test results, defense counsel's inquiries led to Detective Jaycox stating on the record that the test results were obtained and showed the two shell casings were unrelated to the firearm recovered during Morris's arrest. Defense counsel had no way to anticipate this testimony. And even though the trial court prevented any additional questioning on this issue or introduction of the test results, the jury heard Detective Jaycox's related testimony.

{¶ 38} In applying the *Parson* factors, I would find that Blair's defense strategy was adversely impacted, and Blair was prejudiced by the state's failure to disclose the test results. I would find, pursuant to Blair's first assignment of error, that the trial court abused its discretion when it denied Blair's motion for a mistrial; vacate Blair's convictions; and remand for a new trial.

{¶ 39} For these reasons, I respectfully dissent.