[Cite as *State v. Sigman*, 2018-Ohio-3850.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

FAYETTE COUNTY

STATE OF OHIO, :

    Plaintiff-Appellee, : CASE NO. CA2018-01-002

                    : O P I N I O N

- vs -                     9/24/2018

                    :

JASON L. SIGMAN, :

    Defendant-Appellant. :

CRIMINAL APPEAL FROM FAYETTE COUNTY COURT OF COMMON PLEAS
Case No. CRI 20170173

Jess C. Weade, Fayette County Prosecuting Attorney, Sean M. Abbott, Fayette County Courthouse, 110 East Main Street, Washington C.H., Ohio 43160, for plaintiff-appellee

Steven H. Eckstein, 1208 Bramble Avenue, Washington C.H., Ohio 43160, for defendant-appellant

**PIPER, J.**

{¶ 1} Defendant-appellant, Jason Sigman, appeals his conviction in the Fayette County Court of Common Pleas for endangering children.

{¶ 2} Sigman and Brett Henry were cutting grass using zero-turn riding lawnmowers. Sigman permitted a four-year-old child to ride on the foot platform of the lawnmower. When Sigman turned the lawnmower, the child was thrown off the foot platform and the child's hand

went under the lawnmower's deck. The child's hand made contact with the blade, was severed from his arm, and was unable to be reattached.

{¶ 3} Sigman and Henry were indicted on single counts of endangering children, and both men went to trial as co-defendants. Defense motions for a directed verdict of acquittal at the close of the state's case were denied. The jury was unable to reach a verdict specific to Henry, but found Sigman guilty. The trial court then sentenced Sigman accordingly. Sigman now appeals his conviction and sentence, raising the following assignments of error. For ease of discussion, and because they are interrelated, we will address Sigman's first two assignments of error together.

{¶ 4} Assignment of Error No. 1:

{¶ 5} THE TRIAL COURT ERRED IN DENYING SIGMAN'S CRIM.R. 29 MOTION FOR ACQUITAL [SIC] AS THE EVIDENCE PRESENTED WAS INSUFFICIENT TO CONCLUDE THAT GUILT HAD BEEN PROVEN BEYOND A REASONABLE DOUBT IN VIOLATION OF HIS RIGHTS TO DUE PROCESS AND A FAIR TRIAL UNDER THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND ARTICLE I, SECTIONS 10 AND 16 OF THE OHIO CONSTITUTION.

{¶ 6} Assignment of Error No. 2:

{¶ 7} THE TRIAL COURT ERRED IN ENTERING A FINDING OF GUILTY BECAUSE SUCH VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE. FIFTH AND FOURTEENTH AMENDMENTS, UNITED STATES CONSTITUTION, AND ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION.

{¶ 8} Sigman argues in his first and second assignments of error that his conviction is not supported by sufficient evidence and was against the manifest weight of the evidence.

{¶ 9} Crim.R. 29(A) provides that "[t]he court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of

acquittal * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." An appellate court reviews the denial of a Crim.R. 29(A) motion under the same standard as that used to review a sufficiency-of-the evidence claim. *State v. Mota*, 12th Dist. Warren No. CA2007-06-082, 2008-Ohio-4163, ¶ 5.

{¶ 10} Whether the evidence presented at trial is legally sufficient to sustain a verdict is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Paul*, 12th Dist. Fayette No. CA2011-10-026, 2012-Ohio-3205, ¶ 9. Therefore, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 11} A manifest weight of the evidence challenge examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Graham*, 12th Dist. Warren No. CA2008-07-095, 2009-Ohio-2814, ¶ 66.

{¶ 12} In reviewing the evidence, an appellate court must be mindful that the jury, as the original trier of fact, was in the best position to judge the credibility of witnesses and determine the weight to be given to the evidence. *State v. Blankenburg*, 197 Ohio App.3d

201, 2012-Ohio-1289, ¶ 114 (12th Dist.). Therefore, an appellate court will overturn a conviction due to the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." *Id.* Although the legal concepts of sufficiency of the evidence and weight of the evidence are quantitatively and qualitatively different, "[a] determination that a conviction is supported by the manifest weight of the evidence will also be dispositive of the issue of sufficiency." *State v. Jones*, 12th Dist. Butler No. CA2012-03-049, 2013-Ohio-150, ¶ 19.

{¶ 13} Sigman was convicted of endangering children in violation of R.C. 2919.22(A), which provides "no person, who is the parent, guardian, custodian, person having custody or control, or person in loco parentis of a child under eighteen years of age * * * shall create a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support." "Substantial risk" is defined by R.C. 2901.01(A)(8) as "a strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist."

{¶ 14} The culpable mental state for endangering children is that of recklessness. *State v. Tompkins*, 12th Dist. Butler No. CA2014-07-159, 2015-Ohio-2316, ¶ 13. R.C. 2901.22(C) defines the culpable mental state of recklessness:

> A person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that such circumstances are likely to exist.

{¶ 15} In order to obtain a conviction for child endangering pursuant to R.C. 2919.22(A), the state is not required to prove that an accused was the primary caretaker of the victim; instead, "[c]ontrol alone is sufficient to satisfy R.C. 2919.22(A)." *Village of*

- 4 -

*Bloomingburg v. Grove*, 12th Dist. Fayette No. CA2009-06-009, 2010-Ohio-212, ¶ 15. "'Custody and control' as used in R.C. 2919.22(A) has been defined as more than a casual relationship but something less than being in loco parentis." *State v. Stout*, 3d Dist. Logan No. 8-06-12, 2006-Ohio-6089, ¶ 17. "The phrase 'person having custody or control,' can apply to someone physically entrusted with the care of a child as well as a person who stands in a legal relationship to that child." *State v. Kirk*, 10th Dist. Franklin No. 93AP-726, 1994 Ohio App. LEXIS 1189, *9 (Mar. 24, 1994). The control over the child need not be ongoing, but instead, may be temporary. *State v. Brooks*, 8th Dist. Cuyahoga Nos. 75711 and 75712, 2000 Ohio App. LEXIS 1354, *25 (Mar. 30, 2000).

{¶ 16} After reviewing the record, we find Sigman's conviction properly supported by sufficient evidence and that such conviction was not against the manifest weight of the evidence.

{¶ 17} On the day of the incident, Sigman and Henry were cutting grass with the riding lawnmowers, and Sigman allowed the child to ride on the mower. A neighbor testified that he was outside playing with his dog on the day of the incident when he saw the lawnmower approach with the four-year-old child. The neighbor testified that the child was sitting in between Sigman's legs on the lawnmower's deck near the foot platform. The neighbor testified that the child had his hands in his lap, was not holding onto Sigman's legs, and was not wearing any safety gear. An officer who responded to the scene on the day of the indecent testified that he spoke with Sigman after the child received medical attention. Sigman did not indicate to the officer that he took any precautions to protect the child while riding on the lawnmower such as securing the child or using safety devices. Nor was there testimony that Sigman was holding onto the child to prevent his falling.

{¶ 18} The evidence clearly establishes that Sigman created a substantial risk to the child's safety by violating a duty of care or protection. Sigman not only allowed the child to

ride on the mower while he was cutting grass, but also failed to secure the child while the mower was in motion and making turns. During his testimony, Sigman admitted his knowledge that "zero turn mowers, they are twitchy, they turn fast." Still, Sigman did not secure the child on the mower's deck in any manner. Instead, Sigman allowed the child to ride on the deck of the mower, near his feet, in an unsecured manner and without any safety equipment so that the child fell off during a turn and had his hand severed.

{¶ 19} Regarding the relationship between Sigman and the child, the state presented evidence that Sigman had control of the child on the day of the incident. The record indicates that Sigman knew the child well, as he was in a romantic relationship with the child's mother. A child services agency casework testified that the child was in the agency's temporary custody at the time he was involved in the incident. During that time, the child was placed with Henry, who is Sigman's relative. Sigman and Henry also live on the same five-acre parcel of land, though in different homes. The caseworker testified that while the child's mother was in a rehabilitation facility, Sigman would call and inquire as to the child's well-being and that Sigman showed care for the child. Sigman also had a set visitation schedule with the child, including weekly visits.

{¶ 20} Sigman argues that the state failed to prove that he acted in loco parentis to the child. However, the statute is clear that the adult need only be in "control" of the child at the time of the endangering. As stated above, Ohio law is clear that control can be temporary and does not need to rise to the level of a legal relationship so long as the adult has been temporarily entrusted with the care of the child. On the day of the incident, the evidence is undisputed that the child was in Sigman's direct control, as the child was riding on Sigman's lawnmower and was sitting at Sigman's feet as he cut grass that day. Furthermore, Sigman's own testimony indicates that he was involved in the decision-making on the day of the incident, including allowing the child to join he and Henry while cutting

- 6 -

grass, and specifically allowing the child to sit on his mower.

**{¶ 21}** After viewing the evidence in a light most favorable to the prosecution, we cannot say that the jury clearly lost it way in determining that Sigman had control over the child and violated his duty of care and protection for the child. As such, Sigman's conviction is supported by sufficient evidence and was not against the manifest weight of the evidence. Sigman's first and second assignments of error are overruled.

**{¶ 22}** Assignment of Error No. 3:

**{¶ 23}** THE [SIC] R.C. 2919.22 IS CONSTITUTIONALLY VOID FOR VAGUENESS IN VIOLATION OF THE DUE PROCESS CLAUSES OF THE FOURTEENTH AND FIFTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION, AS IT FAILS TO GIVE A PERSON OF ORDINARY INTELLIGENCE FAIR NOTICE THAT HIS CONTEMPLATED CONDUCT VIOLATES THE STATUTE.

**{¶ 24}** Sigman argues in his third assignment of error that the statute criminalizing child endangering is void for vagueness.

**{¶ 25}** There is no indication in the record that Sigman challenged the constitutionality of the statute in the trial court.[1] Issues such as the constitutionality of a statute that are not raised in the trial court cannot be raised for the first time on appeal. *State v. Elifritz*, 12th Dist. Preble No. CA2016-02-002, 2016-Ohio-7193.

**{¶ 26}** Regardless, and even if Sigman raised the challenge to the trial court, there is no substance to Sigman's argument because R.C. 2919.22(A) is clear, understandable, and has been determined to be constitutional by multiple courts. *State v. Sammons*, 58 Ohio St.2d 460 (1979); *City of Beachwood v. Hill*, 8th Dist. Cuyahoga No. 93577, 2010-Ohio-3313;

---

1. The record indicates that Sigman challenged the jury instructions, but Sigman does not point to any indication in the record that he ever challenged the constitutionality of the statute.

*State v. Reed*, 11th Dist. Lake Case No. 89-L-14-130, 1991 Ohio App. LEXIS 2496 (May 31, 1991); and *State v. Kirk*, 10th Dist. Franklin No. 93AP-726, 1994 Ohio App. LEXIS 1189 (Mar. 24, 1994).[2] Accordingly, Sigman's third assignment of error is overruled.

{¶ 27} Judgment affirmed.

RINGLAND, P.J., and M. POWELL, J., concur.

---

2. While the text of the statute has evolved over the years, the core statement of law has remained the same and has been found constitutional.