[Cite as *State v. Jones*, 2026-Ohio-1265.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | | |
|---|---|---|---|
| STATE OF OHIO, | : | APPEAL NOS. | C-250269 |
| | | | C-250270 |
| Plaintiff-Appellee, | : | TRIAL NOS. | 23/CRB/9901/A |
| | | | 23/CRB/5612 |
| vs. | : | | |
| SPARKLE JONES, | : | | |
| | | *JUDGMENT ENTRY* | |
| Defendant-Appellant. | : | | |

This cause was heard upon the appeals, the records, and the briefs.

For the reasons set forth in the Opinion filed this date, the judgments of the trial court are affirmed in the appeal numbered C-250270 and reversed and appellant discharged in the appeal numbered C-250269.

Further, the court holds that there were reasonable grounds for these appeals, allows no penalty, and orders that costs be taxed 50% to appellant and 50% to appellee.

The court further orders that (1) a copy of this Judgment with a copy of the Opinion attached constitutes the mandate, and (2) the mandate be sent to the trial court for execution under App.R. 27.

**To the clerk:**
**Enter upon the journal of the court on 4/8/2026 per order of the court.**

**By:**_____
      **Administrative Judge**

[Cite as *State v. Jones*, 2026-Ohio-1265.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | | |
|---|---|---|---|
| STATE OF OHIO, | : | APPEAL NOS. | C-250269 |
| | | | C-250270 |
| Plaintiff-Appellee, | : | TRIAL NOS. | 23/CRB/9901/A |
| | | | 23/CRB/5612 |
| vs. | : | | |
| SPARKLE JONES, | : | | |
| | | *O P I N I O N* | |
| Defendant-Appellant. | : | | |

Criminal Appeals From: Hamilton County Municipal Court

Judgments Appealed From Are: Affirmed in C-250270; Reversed and Appellant Discharged in C-250269

Date of Judgment Entry on Appeal: April 8, 2026

*Emily Smart Woerner*, City Solicitor, *William T. Horsley*, Chief Prosecuting Attorney, and *Robert E. Rickey* and *Meagan W. Myers*, Assistant Prosecuting Attorneys, for Plaintiff-Appellee,

*Arenstein & Gallagher* and *Hal R. Arenstein* for Defendant-Appellant.

**Bock, Judge.**

{¶1} After police officers obtained a search warrant, they searched defendant-appellant Sparkle Jones's home. During the search, they discovered that Jones's boyfriend Stephon Barnes's two minor children were alone in the home with two accessible loaded firearms. Officers also located a small quantity of drugs, drug scales, cash, and baggies in the home. After a bench trial, the trial court convicted Jones of permitting drug abuse and child endangerment under Cincinnati Mun.Code 915-3(a).[1] Jones appeals, arguing that her convictions were based on insufficient evidence and that Cincinnati Mun.Code 915-3(a) is preempted by R.C. 9.68.

{¶2} We sustain in part and overrule in part Jones's first assignment of error. First, we hold that the State presented sufficient evidence to sustain Jones's permitting-drug-abuse conviction based on the presence of drug scales, baggies, large amounts of cash, firearms, and a small quantity of drugs in her home. But we determine that Jones's child-endangerment convictions are based on insufficient evidence because the State failed to present any evidence that Jones had "custody or control" over Barnes's children.

{¶3} Based on our resolution of her first assignment of error, we decline to address Jones's second assignment of error as moot.

## I. Factual and Procedural History

### A. Procedural history

{¶4} In April 2023, a grand jury indicted Jones on one count of permitting drug abuse in violation of R.C. 2925.13(B), a first-degree misdemeanor. Two months

---

[1] Cincinnati Mun.Code 915-3(a) is, for all purposes relevant to this appeal, identical to Ohio's child-endangerment statute, R.C. 2919.22(A). Therefore, our analysis includes cases interpreting R.C. 2919.22(A).

later, the State charged Jones with two counts of child endangerment in violation of Cincinnati Mun.Code 915-3(a), first-degree misdemeanors.

{¶5} Jones, citing *West v. Cincinnati*, 2024-Ohio-1951 (1st Dist.), moved to dismiss the child-endangerment counts. She argued that Cincinnati Mun.Code 915-3 was preempted by R.C. 9.68. The trial court denied her motion.

{¶6} The trial court consolidated the cases for a bench trial. After trial, the trial court found Jones guilty on all counts. It sentenced Jones to 180 days in jail with 177 days suspended, credited Jones for three days of time served, imposed one year of probation, and waived all fines and costs.

{¶7} Jones appealed her convictions. This court consolidated the appeals.

## B. Facts

{¶8} Officer Brandon Connley of the Cincinnati Police Department testified that officers had been investigating Barnes for drug trafficking. They determined that Barnes lived at a residence with Jones and Barnes's two children, 13-year-old T.B. and three-year-old E.B. The children were not Jones's children. Jones leased the residence.

{¶9} Several times, officers observed Barnes as he left the home and sold drugs to a police informant. The officers never saw Jones with Barnes during these controlled buys. Officers later obtained a search warrant for the home.

{¶10} When officers went to execute the warrant, they observed Jones and Barnes leave the home in Barnes's car. Officers stopped Barnes's car. They did not find any controlled substances in the car. Next, officers knocked on the door of the home. T.B. answered the door. E.B. was also home, sleeping in an upstairs bedroom.

{¶11} During the officers' search of the home, they found a small amount of cocaine, drug presses, and "numerous little red baggies" in the kitchen. In the dining room, officers located a handgun on top of "like a bar hutch . . . maybe four feet off the

ground." Also on top of the hutch were a container of candy, a trophy, and a controller for a gaming device. Officers determined that the gun was loaded with a round in the chamber. Connley testified that the gun would have been accessible to a child.

{¶12} There were two walk-in closets in the room where E.B. was sleeping. Officers found a loaded firearm on a six-foot-high shelf in one of the closets. That closet contained adult male clothing and children's clothing. The other closet contained all female clothing. Connley testified that, while "it might be a stretch saying that the 3 year old could have got to" the firearm in the closet, he believed the "13 year old would have had no issue gaining access to that firearm."

## II. Analysis

{¶13} On appeal, Jones raises two assignments of error. First, she argues that her convictions for permitting drug abuse and child endangerment were based on insufficient evidence. Second, she asserts that the City of Cincinnati's child-endangerment ordinance, Cincinnati Mun.Code 915-3, is preempted by R.C. 9.68 and her convictions under that ordinance are accordingly invalid. Because we determine that her convictions for child endangerment were based on insufficient evidence, we decline to consider Jones's second assignment of error as moot.

### A. Standard of review

{¶14} In reviewing a conviction under a sufficiency-of-the-evidence standard, an appellate court reviews the evidence in the light most favorable to the State and asks whether a reasonable finder of fact "'could have determined that the state proved each element of the offense beyond a reasonable doubt.'" *State v. Protich*, 2025-Ohio-2981, ¶ 10 (1st Dist.), quoting *State v. Henderson*, 2024-Ohio-2312, ¶ 24 (1st Dist.).

{¶15} On appeal, Jones also describes a manifest-weight standard, but her assignment of error asserts only that her convictions were based on insufficient

evidence and she does not develop a manifest-weight argument in her brief. We accordingly review her convictions under a sufficiency standard only. *See id*. at ¶ 13.

### B. Permitting drug abuse

**{¶16}** Jones was convicted of permitting drug abuse under R.C. 2925.13(B). The statute prohibits any person who is the lessee of premises from knowingly permitting the premises "to be used for the commission of a felony drug abuse offense by another person." R.C. 2925.13(B).

**{¶17}** Jones's brief does not cite this statute or explain which element of the offense the State failed to prove. But she does note that while Barnes was under investigation for drug trafficking, he never sold drugs at the home. Further, she points out that she was never with Barnes during any controlled buys, and police found only one-third of a gram of cocaine in the home.

**{¶18}** Viewed in the light most favorable to the State, the evidence was sufficient to prove that Jones knowingly permitted her home to be used by Barnes to traffic cocaine, a felony-drug-abuse offense. *See* R.C. 2925.03(C)(4)(a); R.C. 2925.01(G)(1), (H). Officers found drug scales, several bags used to package drugs, the firearms, and, in the adult bedroom next to "female products," large amounts of cash. The drug paraphernalia, multiple firearms, and cash provided circumstantial evidence of drug trafficking. *See State v. Marshall*, 2021-Ohio-816, ¶ 41 (1st Dist.) (collecting cases holding that firearms, scales, baggies, and large amounts of currency are indicators of drug trafficking). These items' visible presence in the home supported an inference that Jones was aware of their existence. Accordingly, we hold that sufficient evidence supported Jones's conviction for permitting drug abuse.

### C. Child-endangerment convictions

#### 1. Child-endangerment elements

**{¶19}** Jones was convicted under Cincinnati Mun.Code 915-3(a), which provides, "No person who is the parent, guardian, custodian, person having custody or control, or person in loco parentis of a child shall create a substantial risk to the health or safety of the child by violating a duty of care, protection, or support."

**{¶20}** The City of Cincinnati's municipal code defines a "child" as a person "under eighteen years of age." Cincinnati Mun.Code 915-1-C. The State had to prove that Jones recklessly engaged in the prohibited conduct. *See* Cincinnati Mun.Code 902-11(b). "A person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature." R.C. 2901.22(C).

#### 2. Child-endangerment convictions require specified relationships between the adult and the child

**{¶21}** There is no dispute that Jones was not the children's parent and the State did not allege that Jones was their guardian or custodian. So, relevant here, Cincinnati Mun.Code 915-3(a) applies to a "person having custody or control, or person in loco parentis of a child."

**{¶22}** Analyzing Ohio's sexual-battery statute, the Supreme Court of Ohio determined that a person who is "in loco parentis" to a child "has assumed the dominant parental role and is relied upon by the child for support." *State v. Noggle*, 67 Ohio St.3d 31 (1993), paragraph one of the syllabus (affirming dismissal of a coach's sexual-battery conviction under former R.C. 2907.03(A)(5)). An adult may be in loco parentis to a child even absent financial support. *E.g.*, *State v. Thompson*, 2017-Ohio-

7

9044, ¶ 59 (7th Dist.). Some factors courts consider are the adult's intent to serve as a parent (which may be shown by the adult's acts and conduct), if the adult and child share a close relationship, whether the adult is the child's primary caretaker when the parent is absent, and if the child relies on the adult for support. *Id.*, quoting *State v. Abubakar*, 2011-Ohio-6299, ¶ 10 (10th Dist.).

**{¶23}** The phrase "custody or control" in Ohio's child-endangerment statute is distinct from "in loco parentis." *State v. Primous*, 2020-Ohio-912, ¶ 44 (8th Dist.). To show that a person has custody or control over a child, the State must establish more than a casual relationship between the adult and the child, but less than what is required to show an in loco parentis relationship. *Id.*, citing *State v. Stout*, 2006-Ohio-6089, ¶ 17 (3d Dist.).

**{¶24}** A custody-or-control relationship can be temporary and applies where an adult has been "'physically entrusted with the care of the child.'" *Id.*, quoting *State v. Kirk*, 1994 Ohio App LEXIS 1189, *9 (10th Dist. Mar. 24, 1994); *see State v. Gaddis*, 2011-Ohio-2822, ¶ 58 (2d Dist.) ("[T]he evidence supports a finding that the injury occurred while Gaddis had exclusive care and control of the Child."); *see also State v. Curry*, 2018-Ohio-4771, ¶ 32 (8th Dist.) (defendant was the children's "second babysitter," was the sole adult in the room at the time of the incident, frequently helped out with caring for the children, and was viewed as an authority figure by the children); *State v. King*, 2010-Ohio-2402, ¶ 23 (5th Dist.) ("Appellant herself testified she was the only adult who had control of [the child] on the day of the boy's injuries."); *State v. Sigman*, 2018-Ohio-3850, ¶ 19 (12th Dist.) (defendant had custody or control over the child where the defendant knew the child well due to defendant's romantic relationship with the child's mother, had an established visitation schedule with the child, and testified that he "was involved in the decision-making on the day of the

8

incident" involving the incident that injured the child); *State v. Austin*, 2018-Ohio-3048, ¶ 35 (8th Dist.) (although the child and her mother had a separate apartment, they lived with the defendant "pretty much all the time," defendant acted like the child's parent, and while the child's mother was sleeping, defendant began the "morning routine" by directing the child to brush her teeth and get dressed).

### 3. The State presented no evidence involving Jones's duty to Barnes's children

**{¶25}** On appeal, Jones argues that because Barnes's children are not her children and the State failed to establish that she had any responsibility toward them, her child-endangerment convictions were not supported by sufficient evidence. In its brief, the State offered no argument involving whether Jones's relationship with the children met the "duty" element of the ordinance—that she was a "parent, guardian, custodian, person having custody or control, or person in loco parentis of a child."

**{¶26}** There is no suggestion in the record that Jones was the children's parent, legal guardian, or legal custodian. And, after a careful review of the law and the record in this case, we hold that the State presented insufficient evidence demonstrating that Jones had custody or control over, or was a person in loco parentis to, the children.

**{¶27}** First, the State presented no evidence that Jones acted in loco parentis. There is no evidence she assumed a dominant parental role. And nothing in the record shows Jones had any responsibility for the children, had a close relationship with them, intended to act as a parent, or was the children's primary caretaker when Barnes was absent. The State failed to show that Jones had assumed an in loco parentis relationship with the children.

**{¶28}** Second, the State presented no evidence suggesting that Jones had

custody or control over the children at any point. In fact, other than showing that Jones lived with Barnes and his children, the State presented no evidence involving Jones's relationship with Barnes's children. Cohabitation is not enough to show that Jones acted as the children's parent or exercised custody or control over them. Unlike the plethora of cases finding that a defendant had custody or control over a child, nothing in the record showed that Jones had been entrusted with the children's care, played with the children, put the children to bed, paid rent on behalf of the children, babysat the children, helped with the children's care, was viewed by the children as an authority figure, made any decisions about the children's care, was in charge of the children, or acted in any manner as their parent.

{¶29} Viewing the evidence in the light most favorable to the State, the evidence merely established that Jones cohabitated in a home with the children and their father. This is not sufficient to establish that Jones was in loco parentis, or had custody or control over the children. Because the State presented insufficient evidence on the duty element of the child-endangerment ordinance, it failed to present sufficient evidence to convict Jones of child endangerment.

{¶30} We sustain Jones's first assignment of error in part, reverse her child-endangerment convictions under Cincinnati Mun.Code 915-3(a), and discharge her from further prosecution on those counts. *See Henderson*, 2024-Ohio-2312, at ¶ 33 (1st Dist.) ("A conviction based on insufficient evidence violates a defendant's due-process rights and precludes the state from retrying the defendant.").

### III. Conclusion

{¶31} For the foregoing reasons, we sustain in part and overrule in part Jones's first assignment of error. We decline to address Jones's second assignment of error because it is moot.

**{¶32}** In the appeal numbered C-250269, we reverse the trial court's judgments convicting Jones of child endangerment under Cincinnati Mun.Code 915-3 and discharge Jones from further prosecution on those counts.

**{¶33}** In the appeal numbered C-250270, we affirm the trial court's judgment convicting Jones of permitting drug abuse under R.C. 2925.13(B).

Judgment accordingly.

**KINSLEY, P.J.,** and **CROUSE, J.,** concur.